LORENZO D. COX *et al.,* Plaintiffs in Error, *v.* JAMES MILNER, Defendant in Error.

### ERROR TO MASON.

Where a party has heard of the sale of land from a creditable source, and under circumstances not likely to be forgotten, the duty devolves upon him, if he intends to acquire the land, of investigating the facts.

The levy of an attachment will not cut off the right of a party to land acquired in good faith, under an unrecorded deed, if the attaching creditor had notice of the conveyance.

THIS was a bill filed by plaintiffs in error against defendant in error, in the court below, for an injunction and relief. The bill alleges that on the 27th day of February, 1856, the complainants purchased of Levi Smith certain described land, of which said Smith was then possessed as owner; that they in consideration executed their notes for the sum of $1,000 for said land, in payments of $250 each, which notes were payable, two of them on the 25th of December, 1856, and two of them on the 1st of September, 1857; that these notes, before the filing of the bill, had been indorsed to third persons; that said Smith and his wife, on the said 27th day of February, 1856, executed to complainants a deed for said land, which was acknowledged before a justice of the peace on the same day, and recorded in the recorder's office of the county on the 12th day of March, 1856.

Bill alleges that Smith delivered the possession of the land to complainants at the time of the purchase, and that complainants have been in possession ever since.

Also, that on Sunday, the 9th day of March, 1856, Milner (the defendant) sued out an attachment against said Levi Smith, and had the same levied upon said land as the land of Smith, and that Milner is prosecuting his action at law in said suit, in the Circuit Court of said county, and in case of recovery therein designs to sell the said land in satisfaction of said judgment.

Also, that at the time of suing out said attachment against Smith and the levy thereof, said Milner well knew of the sale of said land to complainants, or some one unknown.

Bill prays for an injunction restraining the sale of said land under said attachment, and general relief; makes Milner and Smith defendants, and waives answer under oath. An injunction issued as prayed.

Milner answered, setting forth that he has no personal knowledge of the sale of the land to the complainants in the bill set forth, but does not deny knowledge otherwise, nor of

the consideration paid or agreed to be paid therefor ; but, from information and belief, presumes the said sale and consideration paid therefor may be as stated in the bill; that he has no knowledge of the execution of a deed as in the bill stated, nor of the record thereof, and calls for proof.

Admits the suing out of the attachment against Smith, and the levy of the same upon the land as alleged in the bill; denies that complainants were in the possession of said land at the time said writ was issued and levied, but alleges that the same was then in the possession of Smith ; denies that he had any knowledge of the sale and conveyance of the land to complainants at the time of said levy, directly.

Replication was filed to the answer of Milner.

The cause being heard upon the bill, answer, replication and evidence taken, the court ordered that the injunction granted in said court be dissolved and the bill dismissed, and that the defendant be at liberty to proceed with his attachment.

M. Hay, and T. P. Cowan, for Plaintiffs in Error.

S. W. Fuller, for Defendants in Error.

Breese, J. The only question presented in this case is, did the appellees, the attaching creditors of Smith, have notice of the sale of the land to the appellants, before the levy of their attachment ?

The proof is clear that Smith had sold and conveyed the land to appellants for a valuable consideration, and without fraud to appellants, on the 27th Feb., 1856, and the deed duly filed for record and recorded on the 12th March thereafter. The attachment was issued on the 9th of March.

The bill alleges that appellees, when they levied the attachment, knew of this sale to appellants.

Milner, who alone answered the bill, states that he had no personal knowledge of the sale, nor of the consideration paid, but, from information and belief, presumes the sale and consideration may be as stated in the bill, and that he has no knowledge of the execution of a deed as stated in the bill, nor of the record thereof, and calls for proof. He also denies possession by appellants at the time of the levy, but alleges it was in the possession of Smith, and further denies that he had any direct knowledge of the sale and conveyance of the land to the appellants, complainants. A replication was filed to this answer, and testimony taken before the master.

Freeman Westfall, one of the witnesses for complainants, details a conversation he heard between Mr. Milner, the defendant,

and William Trent, at Trent's house, in Black Oak Grove, on a
Sunday in March, 1856, when he was on his way to the county
seat to take out the attachment, in which he spoke of some
lands lying somewhere between Allen's Grove and Salt Creek,
and said that a man by the name of Smith had sold the land
and squandered his property and left, and that Smith had kept
a store there and owed him about a thousand dollars; that he
was going to take out an attachment on the land and try to
secure his money; thinks, but is not certain, there was some-
thing said about getting his attachment levied on the land before
the deed was recorded.

William Trent corroborates substantially this testimony,
though he says nothing about a levy before recording the deed,
or anything about a deed.

Jacob Propst testified, that about the first of March, Smith
and the complainants were at his house, and Smith handed a
deed to one of the two, and observed, that they were to take
possession of the land that spring, excepting one acre to keep a
storehouse on; did not see the deed.

Powell Engle, for complainants, testifies, that he rented of
Cox ten acres of the Smith land, between the first and fifth of
March; that it was known among a good many of the neigh-
bors that complainants owned the land; that they moved on to the
land about the first of April; that he relinquished his contract
for the ten acres, and never cultivated it.

John S. Wilbourn, the clerk of the Circuit Court, sworn on
the part of complainants, says, that when a certain attachment
was about to issue against a man by the name of Smith, in favor
of Milner, either Milner, or Moss, his attorney, remarked that
they understood that Smith had sold his lands, and they wanted
an attachment immediately. This was on Monday; the attach-
ment issued same day; that on request of Milner he searched
the records to see if there was any conveyance from Smith, and
found none; that as recorder of Mason county, he gave a man
by the name of Smith a certificate that there was no incum-
brance on the land, he saying he wanted it to show to some
person to whom he was about to sell the land, to satisfy them,
and this was sometime before issuing the attachment.

William L. Woodward, on the part of the defendants, testi-
fies as to the premises being occupied by Mrs. Smith and family
on the day the attachment was levied, and that complainants
did not take possession until four or six weeks afterwards.

W. D. Moss, on the part of the defendants, says, that he was
present at Trent's at the time spoken of by Westfall and Trent,
and heard all the conversation, and not a word was said about
their being in a hurry to get to Havana to get out an attach-

ment on the land, because it was conveyed; says he went to Havana with Milner from Trent's, to search the records to find if Smith owned any land and had conveyed it; found land in Smith's name and no conveyance on record; went from Havana to Smith's place on the following Monday with the sheriff and Milner, and found a woman calling herself Mrs. Smith in possession of the premises. Says that he first heard of Cox and Powell claiming to have purchased the land, at the house of Mrs. Bleakley on the after part of the same day on which the attachment was levied on the goods; that prior to this time, he, and he believes Milner, had no knowledge of the claim of the complainants.

The testimony of Mr. Moss is not sufficient to weaken or affect that of Westfall and Trent, and Wilbourn, the clerk of the court. They state distinctly a knowledge on the part of Milner that Smith had sold the land before the attachment was sued out, and the inference is very strong, that Westfall could not be mistaken when he said he thought, but was not certain, Milner said he wanted to attach the land before the deed was recorded — all the facts squint that way. Even Milner does not deny that he had heard of the sale.

We are satisfied the facts proved, and Milner's admissions in this answer, charge him with notice that the land had been sold by Smith before he levied the attachment on it. The case comes fully within the principles recognized by this court in the case of *Doyle et al.* v. *Teas et al.*, 4 Scam. 202, where we say, the doctrine in relation to notice is, that each case must be governed by its own peculiar circumstances; and where a court is satisfied that a subsequent purchaser has acted in bad faith, and that he either had actual notice of a prior sale or agreement, or might have had that notice, had he not willfully or negligently shut his eyes against those lights which, with proper observation, would have led him to a knowledge of the facts: The defendant is certainly chargeable with notice in law, because he had information sufficient to put him upon inquiry, as he admitted he had heard Smith had sold the land. In all cases where the evidence is satisfactory that a party claiming had heard of the sale of the land before he purchased, and from a source entitled to any reasonable credit, and under circumstances not likely to be forgotten, the court would hold that the duty devolved upon him of tracing the matter out, and ascertaining its truth. Such knowledge is sufficient to put him upon inquiry, and makes him chargeable with knowledge of such other facts as might be ascertained by the evidence of ordinary diligence and understanding. *Rupert* v. *Mark*, 15 Ill. R. 542.

When Milner heard that Smith had sold the land to com-

plainants, which Engle states was known among a good many of the neighbors, a little inquiry would have resulted doubtless in the exhibition of the unrecorded deed to the defendant, if he was desirous of seeing it, or of being fully satisfied on that point. He had the means for originating and carrying on a full inquiry, but did not do so. It is unnecessary to multiply authorities on this point.

The levy of the attachment did not cut off the complainants' right to the land — it must be postponed to that right, and consequently, the decree must be reversed and the cause remanded, with instructions to the Circuit Court to restore the injunction, and to make the same perpetual.

*Decree reversed.*