JOHN SLATTERY

*v.*

MARGARET RAFFERTY.

1. SUBSEQUENT PURCHASER *with notice—and herein, what constitutes notice.* If one purchases land of the owner knowing that the latter has already mortgaged it to another, although by a wrong description, such purchaser will take the land subject to the mortgage.

2. And even if the purchaser have no actual notice of the mortgage having been made by such wrong description, yet if the circumstances attending the transaction are of a character to put a reasonably prudent man upon such inquiry as would, by the exercise of reasonable diligence, lead to a discovery of the existence of the mortgage, the purchaser will be bound in the same manner as if he had actual notice.

3. So, where the son of a mortgagee told the purchaser before he had made full payment of the purchase money that his mother, a person known to the purchaser, held a mortgage upon the premises, such information pointed out the way of inquiry, and amounted to notice to the purchaser from the time it was given.

4. But if the information be of an indefinite character, and does not in any manner indicate the means by which the truth of the matter can be ascertained,—as, where a stranger to the title, while the person proposing to purchase is searching the records for information, tells him there is something wrong about the title, but gives no names or other facts pointing out a course of inquiry, such information will not amount to notice, either actual or constructive.

5. SAME—*and herein, as to the effect of recording a deed containing a wrong description.* So, if there be nothing in the attending circumstances calculated to put the purchaser on inquiry further .than the fact that the mortgage with such wrong description is upon the records of the county, and has been seen and read by the purchaser, he will hold the land discharged from the mortgage incumbrance.

6. SAME—*as to notice in the particular case.* The owner of a tract of land executed a mortgage thereon, the mortgage giving a wrong description of the premises, naming section nineteen instead of section twenty-one, the latter being the correct description. This mortgage was recorded nineteen days after its execution. Subsequently the mortgagor sold and conveyed the same land, by its proper description, to his brother, at its fair value. This purchaser, before the bargain was consummated, examined the record of deeds to ascertain the state of the title. He testified that he there found a mortgage on the premises from his brother to the same person to whom the mortgage containing the misdescription was given, but upon inquiry he found the mortgage so found recorded had been paid. The purchaser further testified that he did not find on the record the mortgage containing the misdescription at all; that he neither knew nor heard anything whatever about such a mortgage until some time after his purchase, nor until he had paid all but the last installment of the purchase money, when the son of the mortgagee told him his mother held such a mortgage. At the time of the purchase, and prior thereto, it was pretty well known in the neighborhood where the land lies that there was such a mortgage upon it. The purchaser had resided in that neighborhood some seventeen years before the mortgage was given, and knew the land well,—but since that time he had not resided in the neighborhood, .and at the time of his purchase he resided some ten miles distant. The two brothers, the grantor and grantee, had not been upon intimate terms for several years prior to the purchase, and visited each other only at long intervals. It was said by another witness that the purchaser was acquainted in the neighborhood generally, but he was seldom there, and that at the time the mortgage was given he lived seven or eight miles from his brother. It was held that these facts were not enough to put the purchaser upon inquiry at the time of his purchase respecting the mortgage, or to charge him with notice thereof.

7. SAME—*effect of notice of prior mortgage after purchase, but before the purchase money is paid.* Where a purchaser of land, before payment of the purchase money, has notice of a prior mortgage which does not appear of record, and of which he had no notice at the time of his purchase, he at once, by operation of law, is converted into a trustee, and as such holds the land as a trust fund for the payment of the mortgage debt,—and should he subsequently pay the purchase money to his grantor, he will do so at his peril,—for such payment will not at all relieve him from his liability as trustee, or discharge the land from the trust which the law has fastened upon it for the benefit of the mortgagee.

8.  The same principle applies where a part of the purchase money has been paid, in respect to the residue remaining unpaid.

APPEAL from the Circuit Court of Knox county.

This is an appeal from the circuit court of Knox county, to reverse a decree rendered by that court, June 30, 1877, in a suit in chancery, wherein Margaret Rafferty was complainant, and John Slattery and E. Erickson (whose christian name does not appear in the proceedings) were defendants. The bill was filed August 22, 1873, and sought to reform a mortgage (alleged to have been executed by Edward Slattery to the complainant,) and to foreclose the same. The mortgage in question was dated January 2, 1868, to secure a promissory note of that date, signed by Edward Slattery, for $348.50, payable October 1, 1868, with interest at the rate of ten per cent per annum.

The property described in the mortgage is the east half of lot 1, of subdivision of the south-east quarter of section 18, town 12 north, range 1 east, fourth principal meridian.

It is alleged in the bill that this mortgage was duly recorded on January 21, 1868, in vol. 20, p. 412, Mortgages, in the recorder's office of that county.

It is charged in the bill that there was a mistake made in drawing the mortgage, and that instead of the words "section 18," it was intended to have inserted the words "section 21."

It appears from the record, that on the 8th of February, 1870, Edward Slattery, the maker of this mortgage, sold and conveyed the land in question, in section 21, to his brother, John Slattery, who immediately took possession of the same and made some improvements in fencing and cultivating the same, and that afterwards John Slattery made a contract of sale of this property to Erickson; he entered into possession and has held possession ever since.

The appellee charges that John Slattery and Erickson, each, at the time of his purchase, had notice of complainant's equities, and that she was entitled to a lien upon this land

in section 21, to secure the debt mentioned in the mortgage above described.

Edward Slattery was originally made a party to this suit with Erickson, John Slattery not being made a party at that time.  Before the case was brought to a hearing complainant, for some reason not appearing in the record, dismissed her suit as against Edward Slattery, and proceeded to a final decree against Erickson.  This decree was entered in July, 1875. Erickson brought the record to this court for review.  The cause was submitted at the September term, 1875, and the decree reversed, and the cause remanded.  (See *Erickson* v. *Rafferty*, 79 Ill. 209.)

The attention of 'this court seems not to have been called to the fact that the bill as against Edward Slattery had been dismissed before that time.

October 30, 1876, the mandate of the Supreme Court reversing the judgment, and directing further proceedings, was filed in the circuit court of Knox county, and the cause re-docketed, and the bill was amended, making John Slattery a party, and in some other respects.

Erickson and John Slattery, respectively, answered the amended bill, replications were filed, proofs taken, and the cause again heard at the June term, 1877, in which the court found the issues of fact for the complainant, directed the mortgage to be reformed so as that it should describe the land in section 21, as claimed by complainant, instead of the description as stated originally in the mortgage, and the court found that John Slattery and Erickson were neither of them *bona fide* purchasers, and their interests in the land were held subordinate to complainant's mortgage so reformed, and a decree of foreclosure and sale was made.

From this decree John Slattery appeals.

Mr. F. S. MURPHY, for the appellant.

Messrs. WILLIAMS. McKENZIE & CALKINS, for the appellee.

Mr. JUSTICE MULKEY delivered the opinion of the Court :

A reversal of the decree in this case is urged on the alleged ground that appellant was a purchaser of the premises in question, for a valuable consideration, without notice of appellee's rights.

Appellee, on the other hand, insists that the circumstances attending appellant's purchase show that he must have had notice of appellee's mortgage; or at least they were of a character to have put an ordinarily prudent person upon such inquiry as would have led to a knowledge of her rights.

The law, as applicable to the issue thus raised by the parties to this record, is well settled, and there is no controversy here with respect to it. If one purchase land of the owner, knowing that the latter has already mortgaged it to another, although by a wrong description, the purchaser will take the land subject to the mortgage. And even if the purchaser have no actual notice of the mortgage having been made by such wrong description, yet if the circumstances attending the transaction are of a character to have put a reasonably prudent man on such inquiry as would, by the exercise of reasonable diligence, have led to a discovery of the existence of the mortgage, the purchaser will be bound in the same manner as if he had actual notice. On the other hand, if there is nothing in the attending circumstances calculated to put the purchaser on inquiry, further than the fact that the mortgage with such wrong description is upon the records of the county, and has been seen and read by the purchaser, he will hold the land discharged from the mortgage incumbrance.

These simple propositions can only serve as a guide in a general way, as every case of this character must necessarily depend, in a great measure, upon its own circumstances. In the light of the principles which they announce let us look at the main facts disclosed by the record before us, and upon which the rights of the parties to it must depend.

Edward Slattery, on the 2d day of January, 1868, mort-

gaged to appellee the east half of lot 1 in subdivision of south-east quarter section 21, township 12 north, range 1 east. By mistake or design of the mortgagor, to whom was entrusted the preparing of the mortgage, the land was described as being in section 18 instead of 21 as it should have been. The mortgage was given to secure a loan of $348.50, for which Slattery executed his promissory note, payable the 1st of October following. The mortgage was recorded in the proper office 19 days after its execution, and no part of the mortgage debt has ever been paid.

On the 8th of February, 1870, John Slattery purchased of Edward Slattery the same premises, and on the same day received a deed therefor. Prior, and up to the time of appellant's purchase, the fact of Mrs. Rafferty having a mortgage on the land was pretty generally known in the neighborhood in which it lies—at least several witnesses swear to having heard it spoken of among the neighbors. Appellant, before purchasing, went to the county seat and examined the records of deeds for himself. He swears that he found on record a mortgage on the premises in question from his brother to Mrs. Rafferty for $125, which he afterwards, on inquiry, learned, from his brother and Webster, had been paid; that he did not find on record the mortgage now in question at all, and that he did not otherwise know or hear anything about it till in the fall or winter after his purchase, when, for the first time, he was informed by Mike Rafferty there was such a mortgage; that at that time he had already paid all the purchase money, except the last installment of $250, which he paid afterwards.

It further appears that appellant sold the land in question to one Erickson before the commencement of the suit, though no conveyance had been made; yet the evidence clearly shows that Erickson bought with full notice of appellee's equities. His rights therefore must depend solely upon the good faith of appellant's purchase.

It further appears, from the testimony of appellant, that he

lived during the year 1855 in the neighborhood of the land, and that he got pretty well acquainted there, and knew the land well; but that since then he has not lived in that neighborhood, and that at the time of his purchase, and for a year or two previous, he lived where he then was, some ten miles distant; that he and his brother were not intimate, though the latter occasionally came to his house and borrowed money of him; that witness some times, though seldom, visited his brother, but at one time there was a period of five years in which he did not visit him.

Whalen, one of appellee's witnesses, who lived within about a mile of the land, swears that John was acquainted in the neighborhood generally, but that he was seldom there; and that in 1868 he lived seven or eight miles from his brother Ed.

Mrs. Rafferty swears that she did not know very well where John Slattery ever lived. This, we believe to be the substance of all the evidence bearing on the question of notice.

It is evident, from this summary of the evidence, that the county records contained nothing that could be regarded as constructive notice of the Rafferty mortgage at the time of appellant's purchase; nor is there any pretence for claiming that he had express notice of it. Indeed, there is no claim of that kind. So, it only remains to be seen whether the facts above stated were of a character to have put an honest and ordinarily prudent man on such inquiry as would, by the exercise of reasonable diligence, have led to a discovery of the Rafferty mortgage; or, in other words, whether the circumstances attending appellant's purchase amount to constructive notice.

While the recording laws of the State should not, so far as courts are able to prevent, be permitted to be made an instrument of oppression or fraud, on the one hand, yet a sound and wise policy, on the other hand, demands that they should be rigidly enforced and faithfully executed.

The material prosperity of every country depends largely upon the titles of its lands being clear and free from doubt, so

that the purchaser can be assured of getting what he bargains
and pays for, and that the seller may safely warrant his title
without the hazard of having his children stripped of their
patrimony when he is dead and gone, to make good the title
which he assured while living.

Where the title purchased is clear and good, as appears
from the record, mere suspicions that the purchaser may have
had notice of some outstanding unrecorded equity will not
warrant a court in defeating such title of record.   To justify
the court in doing so, the evidence of an outstanding equity
or title must be of such a character as to cause a man of ordi-
nary prudence and experience to suspect there is something
wrong with the title which does not appear of record, and also
in some manner point out or indicate the means by which the
truth of the matter can be ascertained, or, in other words,
indicate or point out the course or direction of inquiry.   And
in considering the circumstances attending a transaction of
the kind, in order to arrive at the real truth of the matter, the
court should not start out with the hypothesis that the pur-
chaser is dishonest and not worthy of credit, but good faith,
honesty and fair dealing should be presumed until the con-
trary appears.

As far back as the case of *Moore et ux.* v. *Hunter et al.* 1
Gilm. 317, where, after a great lapse of time, it was sought to
overturn a purchaser's title by proof of extrinsic facts tending
to show that the purchaser had notice of an outstanding equity,
this court said " that a court of equity ought to be fully con-
vinced by clear and incontrovertible testimony before they
subvert a long standing legal title accompanied by possession.
*   *   *   A doubt must be converted into something like
a certainty before a court of justice would be justified in
breaking down a regular chain of title."

In *Pitman* v. *Sofley*, 64 Ill. 155, Sofley had made a deed to
Cordelia Teters, a girl he had raised.   The understanding
was that the deed was not to be used or put on record until
after his death.   Sofley, at the time, was seriously ill, and the

deed was made in apprehension of death and upon the understanding just stated. In violation of this arrangement, Miss Teters, in a few months thereafter, put the deed on record. Several years elapsed and Sofley took no steps to have the deed canceled. In the meantime Miss Teters married one Ostrander, and after the lapse of about five years from the making of the deed, she and her husband conveyed the premises to Pitman. Pending the negotiation between them, and while Pitman was examining the county records to see if the title was right, he was expressly told that there was some trouble about the title, but his informant mentioned no names, nor did he otherwise give him any clue by which he could learn what the trouble was. Under this state of facts Sofley filed a bill to have the two conveyances above mentioned set aside, and there was a decree in the circuit court to that effect. But upon appeal to this court by Pitman that decree was reversed, and in delivering the judgment in that case we said: " The notice was wholly insufficient. It was only a vague report from one who had no interest in the property and could not affect the purchaser's conscience. It should always be clearly proved, and should be of such a character that a disregard of it would be a fraud."

Looking at the case before us in the light of the rule laid down in the cases just cited, what fact or facts do we discover in the evidence calculated to cause an honest, sensible man to suspect that there was anything wrong about the title? If any one informed appellant of the existence of Mrs. Rafferty's mortgage at or before his purchase, it is very clear there is no proof of it in the record; and if there are any facts or circumstances to be found in the record that would justify us in holding that appellant at the time of his purchase had constructive notice of appellee's mortgage, we are unable to discover them.

It is said appellant knew the property. That is true. But what of it? It would be a strange doctrine indeed to assume that because one might be familiar with the location and char-

acter of a piece of land, he therefore knew the condition of its title. Such a position is not in accord with common experience.

Another fact relied on is, that appellant once lived in the neighborhood of the land. Yes, but that was some five years before his purchase.

As already shown, both at the time of the execution of the mortgage and making his own purchase he lived about ten miles distant. But suppose he had lived in the neighborhood of the land all the while, is it to be laid down as an inference of law that every one who lives in the neighborhood of a tract of land shall be presumed to have notice of any and all secret liens that may exist upon it? Surely not.

It is said, however, that appellant is the brother of the mortgagor and therefore he must be presumed to have been informed by him of this mortgage. We are not aware of any authority holding that if one brother purchases land of another he shall be deemed to have notice of all secret liens that may exist upon the land, and held responsible accordingly. But in effect, such a rule seems to be insisted on here, notwithstanding appellant paid a valuable consideration for the land, and the records of the county in which it lies show that the title at the time of his purchase was clear and free from all liens and incumbrances, and notwithstanding the purchaser swears that he, neither before or at the time of his purchase, had any notice or intimation of the existence of the lien in question, and his testimony in this respect is not contradicted by any one. It is difficult to realize how any one can seriously contend for such a doctrine.

The case, in a word or two, is this: Here are two brothers, not at all intimate, living some ten miles apart, and seldom see each other. One owns a little farm of twenty-five acres, with which the other is familiar. The owner, being in straightened circumstances, goes to the other's house and tells him he wants to sell him his farm, stating the terms. The latter, not being willing to trust the representations of the other as to the con-

dition of the title, goes and examines the county records for himself, and after satisfying himself that the title was all right, as the record showed, he purchased the farm at the price agreed on, paying the full value therefor, when it subsequently turns out, after the purchase money has all been paid but $250, there was a secret lien on the land amounting to several hundred dollars, of which, the purchaser swears, he had no notice or intimation whatever. In all this we see nothing to warrant us in holding that appellant bought with notice, either actual or constructive, of appellee's mortgage.

It appears, as already shown, that in the fall or winter after appellant's purchase, and something over two years before he made the last payment of $250, he was expressly informed by Mike Rafferty that his mother had a mortgage on the land in question.

The doctrine is well settled, that where a purchaser of land before payment has notice of an existing mortgage, which does not appear of record and of which he had no notice at the time of his purchase, he at once, by operation of law, is converted into a trustee, and as such holds the land as a trust fund for the payment of the mortgage debt, and should he subsequently pay the purchase money to his grantor he will do so at his peril, for such payment will not at all relieve him from his liability as trustee, or discharge the land from the trust which the law has fastened upon it for the benefit of the mortgagee. And the same principle applies to a case like the one before us, where only a part of the purchase money has been paid at the time of notice of the prior incumbrance. Where only a portion of the purchase money is unpaid and the same does not exceed the amount of the mortgage, the mortgagee will have a lien on the purchased premises to the extent of the unpaid purchase money. So, if such purchaser goes on, after notice, and makes further payment, he, as before stated, will do so at his peril, and the land will not be discharged from the trust.

The doctrine with respect to notice as applicable to cases of

this kind is precisely the same as that already laid down with respect to buying with notice. Where the information is of an indefinite character, and does not in any manner indicate the means by which the truth of the matter can be ascertained, or, in other words, does not point out the direction or course of inquiry, it will not amount to notice either express or constructive.

In *Preston* v. *Williams et al.* 81 Ill. 176, where a subsequent purchaser was told that the land had been sold, but by reason of a mistake in the first deed the record did not show that the land had been sold, this court said: " It was enough that he had notice of a prior conveyance; however defective it might be, a court of equity would not let him profit by it."

In *Rupert* v. *Mark,* 15 Ill. 542, in discussing the doctrine under consideration it was said: " Whatever is sufficient to put one on inquiry as to the rights of others is considered legal notice to him of those rights. He is chargeable with knowledge of such facts as might be ascertained by the exercise of ordinary diligence and understanding." To the same effect are the cases of *McConnel* v. *Reed,* 4 Scam. 123, *Ogden et al.* v. *Haven et al.* 24 Ill. 59, and *Morrison* v. *Kelley,* 22 id. 624. And in *Cox et al.* v. *Milner,* 23 Ill. 476, we said: " Where a party heard of a sale of land before he purchased, from a source entitled to reasonable credit, and under circumstances not likely to be forgotten, the court would hold that the duty would devolve upon him of tracing out the matter and ascertaining its truth." Under these authorities there seems but little reason, if any, to doubt that it was the duty of appellant, when he was informed that appellee had a mortgage on the premises, to have gone to her and ascertained the truth of his information.

It was not the case of a casual remark, or floating, indefinite rumor, coming from one who had no interest in the matter. The information was direct, and from one having an interest in the matter. His informant was appellee's own son, and

had appellant gone to her he would have learned all about her rights in the land.

The case here is not at all like that of *Pitman* v. *Sofley.* In that case the information was given by one who had no interest in the matter and in a casual way, and there was nothing whatever in the information that pointed out the road of inquiry. Here, it is quite different; the name of the one having the mortgage is given to appellant, thereby directly pointing out the way of inquiry. Instead of going to her and making inquiry, as he ought to have done, he falls back on the record and again satisfies himself his title is all right, and when the $250 note becomes due pays it.

Appellant's conduct after notice is anything but commendable. It shows an utter indifference on his part to the great wrong and outrage which his brother had perpetrated on an ignorant and confiding woman, and for it he must now pay the penalty by having the land in his hands subjected to the payment of the $250 to appellee, with interest thereon from the 8th day of February, 1873, to the time of such payment, at the rate of six per cent per annum.

In cases of this character the fact that the record shows that the purchaser has a clear and perfect title, is no protection to him when he has notice, before payment, of a prior just and meritorious claim upon the land. If the purchaser could relieve himself from the liability imposed by the notice by merely going to the record and verifying what he knew at the time of his purchase, namely, that his title was good and free from all claims as shown by the record, it would amount to a total subversion of the entire doctrine we have been considering, for the very doctrine itself is founded upon the hypothesis that the purchaser has a good title of record.

It results, from what we have already said, that the court below erred in finding that appellant purchased with notice of appellee's rights, and also in charging the land in his hands with the whole of the mortgage debt. The land should have been charged in his hands with the payment of $250 of her

claim, with interest, as already stated, it being the amount of purchase money paid by him after notice of her rights. For this error the decree is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*