# WM. McCANN vs. GEORGIANA TAYLOR & others.

A bill alleged, that a husband executed a deed of certain property in trust for his wife and self during life, with remainder in trust for their children, that at the time of making it he was fully competent to do so, because, if indebted at all, he was so only to a very small amount, and retained property in value greatly above any such indebtedness, that the defendant obtained judgment against the husband upon a note executed *after* the enrollment of the deed, and with *actual notice* of *its existence*, and has caused execution to be issued on this judgment, and to be levied upon the property conveyed by the deed, pretending that it was fraudulent as to creditors, and desiring thereby to cast shadows and doubts upon the title, so that

there may be a sale of the property under the execution at a gross under-value, to the irreparable injury of the complainants, who were the wife and infant children of the husband. HELD, that the case thus made author-ised the granting of an *injunction* to restrain execution of this judgment.

Upon an appeal from an order *granting an injunction*, the appellate court is confined to the case made by the bill; the *answer* cannot be considered.

APPEAL from the Circuit Court for Baltimore city.

The bill in this case was filed by the appellees, the wife and infant children of Charles R. Taylor, on the 11th of December 1856. It alleges, that Taylor and wife, on the 15th of September 1852, executed a *deed of trust* to William J. Ward and others, of certain lands in the city and county of Baltimore, for the sole and separate use of the wife, during the joint lives of herself and husband, and after the death of either, in trust for the survivor, so long as he or she shall remain unmarried, with remainder in trust for their children; *that* this deed, thus executed by the grantors, was delivered to Ward, with instruc-tions to procure it to be executed by the grantees, and then deliver it to the wife, that she might have it duly recorded, but from misapprehension or inadvertence on her part, or some other cause which the complainants cannot explain, but cer-tainly, as they are assured and verily believe, from no purpose or intent to defraud, hinder or delay the creditors of the hus-band, and from no improper motive whatever, it was not recorded until the 17th of April 1854; *that* at the time of its execution, the husband owned property of large value over and above that conveyed by the deed, had retired from busi-ness, and his debts were small and far less than the value of his property not included in the deed; *that* at the time of its enrollment the husband had not resumed business, his debts were small in comparison with the value of his available means, occasioned no inconvenience to him, and he entertained no apprehension of his ability to meet all his engagements as they should mature, out of his property not covered by the deed. The wife then avers, that she had no doubt this deed was made in good faith by her husband, and, therefore, united with him in its execution, thereby relinquishing her dower in the property conveyed by it, and on subsequent occasions has

united with him in conveyances of other portions of his real estate, for the purpose of facilitating his business operations, and more recently to provide for payment of his debts, and she is therefore advised she is a purchaser for a valuable consideration of the interests reserved by this deed to herself and children, and being certainly free from the imputation of fraud or impropriety on her part, and having no notice of any fraudulent or improper motive on the part of her husband in the execution of this deed, she insists that these interests cannot be impeached at the instance of any of her husband's creditors, and more especially of any creditor who became such after the enrollment of the deed.

The bill then charges and avers, that McCann recovered a judgment against the husband at March term 1856 of the circuit court for Baltimore county, for $1066.61, with interest from the 5th of March 1856, and costs, and has caused execution to be issued thereon, and has levied the same on the property conveyed by the deed, and is about to sell the same under this execution; *that* the complainants have understood that McCann pretends that this deed was made in fraud of the creditors of said Charles, hoping and desiring thereby to cast suspicion upon its validity, so that there may be a 'sale of the estate at a gross undervalue; *that* this judgment was recovered upon a note of the husband, dated the 13th of February 1855, at four months, after the execution and recording of the deed, and that McCann had *actual notice* of the *making and enrollment* of the deed before the time of his becoming a creditor as aforesaid; *that* McCann well knows that the complainants have no moneys wherewith they might assist to pay off this judgment, and will be unable to prevent a sacrifice of their interests in the property as is contrived and intended by him, except by the interposition of the court for their protection; they submit, that McCann becoming a creditor subsequent to the enrollment of the deed, and with notice thereof, ought not to be permitted to proceed with his execution to a forced sale of the property to the sacrifice thereof, and the irreparable injury of the complainants, but ought to be compelled to institute a proceeding to determine the validity of the

McCann *vs.* Taylor.

deed, so that in case it may be adjudged fraudulent as against creditors, provision may be made for the satisfaction of those aggrieved, by a sale of an adequate part of the property, and the residue secured to the complainants; *that* on the 9th of July 1855, the husband conveyed his contingent interest in the property embraced in the deed to Frederick Schumacker, for the consideration of $1250.

The bill then prays for an injunction, to restrain McCann from enforcing his execution by a sale of any part of the property conveyed by the deed, and for general relief, and makes McCann, the trustees in the deed, (one of whom was Frederick Schumacker,) parties defendants.

On the day the bill was filed, the court, (KREBS, J.,) ordered the injunction as prayed, upon a bond being filed in the penalty of $1000, and this having been done the writ issued restraining McCann from enforcing his execution by a sale of *any part* of the property conveyed by the deed. On the 20th of December 1856, McCann filed his answer and entered a motion to dissolve the injunction, which was set down for hearing on the 7th of January following, but subsequently, on the 28th of January 1857, he entered an *appeal* from the order granting the injunction, and gave bond to prosecute his appeal, in the penalty of $15,000, fixed by the court, and then proceeded to enforce his execution, by causing the sheriff to advertise the property for sale on the 2nd of March 1857. The complainants then, on the 11th of February 1857, filed a petition in the court below, charging that this proceeding of McCann was a breach of the injunction, and praying an attachment against him for contempt, but the court, on the 26th of the same month, dismissed the petition, and from the order of dismissal the complainants appealed.

On the next day the complainants, (the record on McCann's appeal having been transmitted to the appellate court,) through their solicitor, applied to the Court of Appeals, then in session, by way of petition, alleging, among other things, that their petition in the court below for an attachment had been dismissed by that court, on the ground that the injunction was virtually dissolved or superseded by McCann's appeal, and

McCann *vs.* Taylor.

praying that he might be restrained from proceeding with his execution pending his appeal, and until the Court of Appeals shall have determined whether the injunction ought to be dissolved or continued.

Upon this application the Court of Appeals, (LE GRAND, C. J., ECCLESTON and TUCK, J.,) ordered the petition to stand for hearing on the 17th of March 1857, "and in the meantime that the appellant, McCann, suspend all further proceedings in enforcement of his execution by a sale of the property in the proceedings mentioned, as having been conveyed by" the deed above referred to, "provided that a copy of this order and of said petition be served on the said appellant on or before the 5th of March next." Service of this order and petition having been duly made, the matter of the petition was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*Thos. S. Alexander,* in support of the petition, argued:

1st. The complainants below, who are the wife and children of Charles R. Taylor, claim the benefit of a conveyance made by Taylor to trustees in trust for their benefit. They charge that the appellant became the creditor of Taylor after the execution of the deed of trust and with notice thereof. On the authority of *McDowell vs. Goldsmith,* 6 *Md. Rep.,* 319, he is not in a position to impeach the deed as a fraud on creditors. The bill further charges, that he pretends that the deed is fraudulent, and has levied his execution on the entire trust estate, which is very valuable, in the expectation that whilst the title is thus clouded by his pretences, he may purchase it at a gross undervalue. On this is grounded the equity of the complainants. In the present state of the case it must be assumed that the injunction was rightfully issued.

2nd. The only question of difficulty involves the construction of the act of 1853, ch. 374. Prior to the year 1835 an appeal would not lie from an interlocutory order granting or continuing an injunction. By chaps. 346 & 380 of the act of that year, an appeal is granted in such cases, and, as the latter act supersedes the inconsistent provisions of the former, where the plaintiff had failed to give bond on obtaining the injunc-

tion, the defendant, by entering his appeal, might suspend the operation of the injunction, provided he gave bond in the penalty and with condition to be prescribed by a judge of the Court of Appeals. By necessary implication, where the plaintiff had given bond, the defendant's appeal, though accompanied by bond, would not suspend the effect of the injunction.

The act of 1853 provides, that an appeal from an order granting or continuing an injunction shall not operate to suspend the injunction *in any case,* unless the defendant, at the time of entering his appeal, shall give bond, with a condition prescribed by the act, and in a penalty and with security, to be approved by the judge granting the injunction, or the clerk of the court out of which it issued. The act does not declare that in *all cases* where such bonds are given the injunction shall be suspended, but that the appeal shall not operate to suspend the injunction *in any case,* unless bond is given in the prescribed manner and form. Hence it results, that where the plaintiff has failed to give bond in obtaining the injunction, the defendant may supersede the injunction by entry of an appeal, and giving bond as prescribed by the act of 1853, but that if the plaintiff had given bond his injunction cannot be' superseded by the entry of an appeal and the giving of such bond. The first object of the act, therefore, was to substitute a new form of security in the place of that which had been allowed by the act of 1835, ch. 380.

The next object of the act was to determine the precise effect of the appeal in the case provided for by the previous clause. And upon giving *such bond*—not in any and every case, but in a case in which, by the preceding clause of the act, the defendant was entitled to give bond to stay the operation of the injunction—the appeal shall operate in the same manner (that is, to the same extent as a *supersedeas*) as appeals do from final decrees. It is not to be imagined that the Legislature, after limiting the operation of the preceding clause to the specific case where the plaintiff had failed to give bond on obtaining his injunction, intended to render this limitation nugatory, and to embrace within its scope the distinct case, wherein the plaintiff, by giving bond, had protected his injunc-

tion against the effect of the defendant's appeal. Cases of injunctions to stay waste are expressly excepted by the act of 1835, ch. 380. This exception is not incorporated into the act of 1853. Is it not a part of the act by necessary impli- cation, or will it be insisted that a defendant, by appealing and giving bond in the form prescribed by the act of 1853, can suspend the operation of an injunction to stay waste? Such consequences must inevitably flow from the construction put on the act by the appellant. Again, it is to operate "in the same manner as appeals do from final decrees." But what kind of final decrees? There may be a final decree awarding simply payment of money, or specific performance of an agreement, or a divorce, or a perpetual injunction. And if we may assume that an appeal from a decree for payment of money will stay execution of the decree absolutely, that an appeal from a decree granting to the wife a divorce will not renew her duty of cohabitation, and that an appeal from a decree awarding a perpetual injunction will not, in any sense, impair the effect of the injunction; the inquiry is pregnant, to what class are we to refer for the purpose of determining the precise effect of an appeal from an order interlocutory, award- ing or continuing an injunction? And the answer is obvious: to the class which includes a final decree awarding a perpetual injunction. The unmistakable object of this clause of the act is, to assimilate the *status* of the parties to an appeal from an interlocutory order granting or continuing a provisional injunc- tion, pending the appeal, to the *status* of parties, to an appeal from a final decree awarding a perpetual injunction, pending an appeal from such final decree. And by parity of reason, as the act of 1835, ch. 380, of which the act of 1853, ch. 374, is amendatory, and the preceding clause of this last act professes to regulate appeals from orders appointing a receiver, the last clause of this last act is to be construed so as to assimi- late the *status* of parties to an appeal from an interlocutory order appointing a receiver, pending the appeal, to the *status* of parties, to an appeal from a final decree appointing a receiver, pending an appeal from such final decree. The question then is, what is the effect of an appeal from a final decree awarding

a perpetual injunction? Is the injunction thereby avoided? or does its vigor remain unimpaired?

In *Thompson vs. McKim*, 6 *H. & J.*, 333, it was declared, that an appeal does not ordinarily stay the operation of the order from which the appeal is taken. It would seem to be, therefore, sufficient to insist that there is no precedent in England or in this State in favor of taking an appeal from a final decree awarding a perpetual injunction, out of the operation of the general rule. The practice of our courts was originally framed by analogy to the provisions of the act of 1713, ch. 4, relating to judgments at law, and is now more certainly warranted by the provisions of the act of 1826, ch. 200, which extends equally to judgments and decrees. But it is to be observed, in the first place, that the expressions in these acts are negative, that no judgment or decree should be stayed unless bond be given, and not affirmative, that execution of any judgment or decree shall or may be stayed or delayed by the party giving bond. In the next place the letter of these acts is limited to the mere ordinary cases of judgments or decrees for payment of money or delivery of property. Thus the penalty of the bond is to be double the sum of money recovered, or double the value of the property directed to be delivered; and the condition is to be for payment of the sum of money or delivery of the property, &c. &c. Other cases, doubtless, which are not within the letter have been brought within the purview of these acts by equitable construction thereof. But an appeal from a decree awarding a perpetual injunction is equally unaffected by the letter of the statutes, and the precedents of the court. Indeed the jurisdiction of the court to interfere by injunction to prevent irreparable injury, could not exist practically and beneficially in association with the right of the defendant to supersede the injunction by entering an appeal from the order by which it is awarded or continued. The appeal bond would afford a very inadequate remedy against the threatened wrong, which we are to assume is incapable of compensation in damages. Cases may be imagined in which the continuance of an injunction for a very brief space may occasion grievous injury to the party against whom

it is directed. The protection against the unjust application of the processes of the court is to be found in its discretion to impose terms or conditions on the party asking for the grant or continuance of the injunction, and I do not deny the authority of this court, or of the inferior court, in many special cases, to stay the operation of the injunction pending an appeal, if such supersedeas can be allowed without defeating the object of the application.

Every consideration of general convenience is in favor of this construction of the act, which is likewise sustained by the anomalous state of the law, which would be effected by giving to it a different interpretation. As the law now stands a complainant whose injunction is dissolved on consideration of bill and answer, may reinstate the injunction by entry of an appeal from the order of dissolution. If it is assumed, that the injunction being continued after the coming in of the answer may be superseded by the appeal of the defendant from the order by which the injunction is continued, it will result, that a party whose equity is sworn away by the defendant's answer, receives protection which would be denied to one whose equity was confessed by the answer.

3rd. An appellate tribunal must have the power, inherent and essential to the exercise of its jurisdiction, to determine the *status* of the parties and of the subject matter pending an appeal, else the object of the appeal may be defeated. In *Thompson vs. McKim*, 6 *H. & J.*, 302, at the instance of the appellant, this court ordered a stay of execution of the order from which the appeal had been taken, upon the very intelligible ground, that the execution of the order might have occasioned irreparable injury to the appellant. In this case the application is made by the appellee. But the principle is the same. If the appellant is permitted to contemn the authority of the order from which the appeal is taken, the subject matter of the appeal may be destroyed, the object of the suit may be defeated, and this court may find that its jurisdiction has been invoked to aid the appellant in the perpetration of an irremediable wrong. It is the duty of this court, in common with all others, to have a care that its authority

shall not be perverted to the purposes of injustice. All laws relating to appeals, whether they refer to the persons by whom an appeal may be taken, or the time for entering an appeal, or the manner of prosecuting the same, the *status* of person or property to be affected by the appeal, or the form or effect of the judgment to be rendered on the hearing, or the mode of enforcing such judgment, must, of necessity, be interpreted and enforced by this court. This court must have the discretion likewise to determine the appropriate time and manner of intervening in the exercise of its jurisdiction, and, as a general proposition, it may be asserted, is bound to intervene at that stage of the cause and in such form as may be most conducive to the general purposes of justice. It cannot prescribe to itself any rule of procedure which will practically cast on the inferior tribunals the authority of passing definitively on the construction of any laws which relate in any degree to the subject of appeals. But if we are entitled to the judgment of this court in construction of the act of 1853, at what other time, in what other manner, is the question to be presented? It cannot be discussed at the hearing of the appeal on its merits, for it is not presented by the record brought up by the appellant. And it may be added, if the appellant is at liberty, in the meantime, to act on his own construction of the act of 1853, or on the construction, placed on it by the court below, the ultimate judgment of this court in our favor will be valueless. In short, if this court cannot now construe the act of 1853, and enforce such construction, the suitor will be practically deprived of his constitutional right to appeal from any order of an inferior court, passed professedly in contravention of that act.

*James Malcolm* against the petition.

The act of 1853, ch. 374, provides "that in *all cases* where an appeal is taken from *any order*, either granting an injunction or appointing a receiver, or from an order refusing to dissolve an injunction, the operation of such an order shall not be stayed in any case *unless* the party praying the appeal *give bond* with security," &c., "and *upon the giving of such bond* the *appeal shall stay* the operation of *all such orders*, in the

same manner as appeals do from final decrees." The language of this act seems too clear for doubt. It applies to *all cases* of appeals from orders *granting* injunctions, appointing receivers and refusing to dissolve injunctions, and says, that from *any such* order an appeal shall not stay its operation *unless bond* is given, but upon *giving the bond* the appeal *shall stay* the operation of all *such orders.*

After the case was thus argued upon this petition, it was held under a *curia,* and before a decision was made, the appeal of McCann, from the order granting the injunction, and that of the complainants from the order dismissing their petition for an attachment, came up for hearing, and were argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

The appeal of the complainants involves the construction of the act of 1853, ch. 374, and the argument upon this was as above stated: upon the appeal of McCann.

*James Malcolm* for the appellant, argued:

That the case presented by the bill was not a case for an injunction, because there could be no irreparable damage done to the complainants by a sale under the execution referred to in the proceedings, for if the deed is *fraudulent and void* no damage could be done them, and they had no standing in a court of equity, and if the deed is valid, then the appellant had a right to sell Charles R. Taylor's interest in the property; and all that the execution purports to sell, is his interest whatever that may be. The proposition of the bill is to establish the doctrine, that if a party makes a fraudulent conveyance, the creditors must file a bill or institute a proceeding to test the *bona fides* of the deed sought to be attacked, and if it is found to be valid, the party takes nothing by his proceeding, and if fraudulent then he only receives sufficient to pay his claim, and nothing for his trouble and expense, and the balance is secured to the fraudulent grantee. We insist that the contrary doctrine has been established in this court by the express decision in *Spindler vs. Atkinson,* 3 *Md. Rep.,* 409. See also, 17 *Conn.,* 493, *Owen vs. Dixon.* If enforcing this execution was any clouding of the title, it was such as every credi-

tor by his execution has the right to make of his debtor's property. The bill does not make a case of *irreparable damage*, for even if the deed is valid no damage could be done the complainants, for we could only sell Taylor's life interest in the property.

*Thos. S. Alexander* for the appellees.

The merits of this appeal must depend on the case made by the bill. The answer forms no part of the record on the hearing of an appeal from an order granting an injunction. *5 Md. Rep.,* 472, *Alexander vs. Worthington.* The case may, therefore, be rested on the averment, that McCann became a creditor subsequent to, and with *notice of*, the deed of trust, and being a subsequent creditor he cannot impeach such a conveyance. *5 Gill,* 449, *Worthington vs. Shipley.* 6 *Md. Rep.,* 172, *Worthington vs. Bullitt. Ibid,* 319, *McDowell vs. Goldsmith.* The case of *Warnick vs. Michael,* 11 *G. & J.,* 153, affirms the power of a court of equity to issue an injunction in such a case as this, and the same decision was made by Chancellor Bland. These cases show, that such is the law of Maryland whatever it may be elsewhere, and there is nothing in the case of *Spindler vs. Atkinson,* to controvert this position; for in that case the creditor who was enforcing his execution became such *prior* to the deed.

Le Grand, C. J., delivered the opinion of this court.

This is an appeal from an order of the circuit court for Baltimore city, granting an injunction restraining the execution of a judgment obtained by the appellant against Charles R. Taylor, the husband of Georgiana, one of the appellees. Under the decisions of this court, on this appeal, we are confined to the case made by the bill. *Wagner vs. Cohen,* 6 *Gill,* 97. *Guyton vs. Flack,* 7 *Md. Rep.,* 398. *Alexander vs. Worthington,* 5 *Md. Rep.,* 471.

The bill, in substance, states this case:—That Charles R. Taylor made a deed of certain property, in trust for his wife and self during life, provided the survivor should remain unmarried, with remainder in trust for their children; that the

note on which the judgment was rendered is dated subsequently to the deed, and that at the time of making said deed of trust, Taylor was fully competent to do so, because, if indebted at all, was so only to a very small amount, and retained the ownership of property largely in value beyond any such indebtedness; that although the deed of trust was not left for record until the lapse of nineteen months after its date, yet, it was of record at the time of the execution of the promissory note on which the judgment was rendered, and besides which McCann had notice of its existence. The bill then avers, that the appellant, as is understood by the complainants, desiring to possess himself of the property mentioned in the deed, pretends it was made to defraud and hinder Taylor's then and subsequent creditors, hoping and designing thereby to cast shadows and doubts upon the title to the property and thus diminish its value at a sale under the execution, which he has caused to be issued on his judgment. This is, substantially, the case presented by the bill, and to it must be limited the view of this court. So confining it we see nothing which does not justify the action of the court below. The bill undoubtedly makes a good case. It avers *bona. fides,* competency of Taylor to make the deed, notice of its existence to McCann by its registration, and irreparable damage to the appellees by the execution of the judgment. Looking to the face of the bill there is nothing to militate against the force of these circumstances, except it be the failure to record, in proper time, the deed. This fact, although not very satisfactorily explained in the bill, is not of any great importance in this case, the bill averring knowledge on the part of McCann, of its existence. Conceiving the bill to have made a good case, we accordingly affirm the order appealed from and remand the cause for further proceedings. When the case is brought to issue, possibly circumstances may be shown annihilating the equity set up in the bill.

It must be borne in mind, that this case is different from that of *Spindler vs. Atkinson,* 3 *Md. Rep.,* 409. There, the debt was created prior to the deed, whilst in this case, it was subsequently incurred. We deem it unnecessary to allude to

the other subjects discussed by counsel, reserving the expression of opinion in regard to them until the case shall, if ever, come before us again.

The case made by the application of the appellees to this court to suspend the execution of the judgment until its opinion should be pronounced on the petition filed, need not now, after what has been said in this case, be passed upon. Of course we are not to be understood, as denying the right of McCann to dispose of the life estate of Taylor in the property. Although the bill alleges that it had been conveyed to Mr. Schumaker, yet, that person is no party to this proceeding, and, therefore does not invoke the protection of the court. If his title be good, the purchaser would take nothing; if not good, then he would acquire, in the absence of other claimants, the life interest of Taylor. These observations are made to avoid misapprehension in regard to what we have previously said.

*Order affirmed.*

ECCLESTON, J., dissented.