L. W. HOUGHTON and another, in equity,

*vs.*

CHARLES DAVENPORT.

Sagadahoc.    Opinion April 17, 1883.

*Trusts. Attachment. Property held in trust mingled with other property.*

It is a general rule in equity, that trust property is not liable to attachment for the debt of the trustee, even in cases where the land attached stands of record in the name of the trustee, and the attaching creditor has not, prior to his attachment, any knowledge or notice of the trust; equity will enjoin against the attachment.

To this rule the recording act in this state, creates an exception, applicable to cases where a debtor conveys real estate by deed, which is not recorded before the estate is attached as the debtor's property, the creditor having no notice of the conveyance prior to the attachment.

The mere act, by a trustee, of mingling trust money with his own money, by depositing the different moneys in a bank in his individual name, with nothing done by the banker to distinguish the trust money from the individual money, does not necessarily prevent an identification of the trust fund. Equity will undertake to disentangle the accounts, and give to the *cestui que trust* the portion that belongs to him.

If a trustee commingles trust money with money of his own, and afterwards separates from the common fund a proper portion of it as the property of the *cestui que trust*, and with such portion of the fund, purchases real estate in his own name, the trust becomes impressed upon and attaches to the money thus set aside and the real estate purchased with such money.

A trustee need not purchase property with the very dollars received from the trust fund, nor give any notice to the *cestui que trust* of the purchase, nor make any delivery to him, in order to create a trust estate. If he uses or loses the trust fund, he may afterwards, by some proceeding or act of his own, substitute his own money therefor, and the substituted money will be subject to the same trust that was imposed upon the money by the trustee used or lost.

BILL IN EQUITY.

Heard on bill, answer and proof.
The opinion states the case and material facts.

*Charles W. Larrabee*, for the plaintiffs, cited :
Perry on Trusts, § § 127, 128, p. 68, and cases there cited ; *Crooker* v. *Crooker*, 46 Maine, 250.

*Adams and Coombs*, for the defendant, contended that there was so much of a commingling by Bovey of his ward's money and property with his own, that it was impossible to identify the trust funds.

" When the means of identification fails, as where an executor converted an estate into money and mixes it with the general mass of his own money and there is no identifying the particular money of the trust, the distributees or legatees have no preference over his other creditors." Perry on Trusts, § 128.

There is no equity in the plaintiffs' position here.

They received from Bovey, a voluntary assignment of all his other property, and then waited till four months had elapsed before they commenced this suit and before they in any way conveyed to this defendant information of any claim upon the land in question as property held in trust, when it was too late for the defendant by resort to insolvency proceedings to share in the other property.

It may be proper for a creditor who has received a preference by receiving an assignment of a part of an insolvent debtor's

estate, to wait the time limited by the statute without giving other creditors notice or doing anything to stimulate their diligence. But when he sees another creditor relying upon an attachment of other property upon which he claims a right to enforce a trust or other lien unknown to the attaching creditor, if he waits till his title to the assigned property becomes indefeasible, and then undertakes to enforce his claim upon the property attached which until then he has kept secret, it is not such good faith as a court of equity will aid. Perry on Trusts, § 870.

PETERS, J. The complainants in this bill allege, and we think prove, that Henry M. Bovey in 1873, was appointed guardian of Richard O. Morse, a minor, and gave bond as required by law; that in 1879, when his ward became of age, Bovey's settlement in the probate court disclosed a deficiency in his accounts of twenty thousand dollars or more; that prior to the settlement he had purchased certain real estate with his ward's money, taking a deed thereof to himself individually, a portion of which shortly prior to this bill was still standing in his own name; that, to save as far as he could loss to his ward and disaster to his bondsmen, he conveyed such real estate to these complainants in trust for his ward; that the respondent has an attachment upon the real estate in a suit instituted for the purpose of collecting a private debt due to him from Bovey; and the complainants seek to have the attachment nullified, and thereby the cloud upon their title removed.

At the threshhold of the case, the suggestion comes from the respondent, that any creditor, who attaches land standing of record in the name of his debtor, nothing indicating that he is not the owner, although the land equitably belongs to another, has a better right than the *cestui que trust*, if the creditor, prior to his attachment, has not knowledge or notice of the trust. To this we do not agree. In proceedings at law, the creditor might have the superior right. Not so in equity.

The precise question has never been determined in any reported case in this state, although we deem the point virtually determined in the case of *Crooker* v. *Crooker*, 46 Maine, 250.

It was there held that, where partners purchased lands with partnership funds, taking deeds thereof in their individual names and not as partners, an attachment of one partner's interest in such lands by his private creditor, should in equity be vacated, in order to give a preference to the claims of partnership creditors and of the other members of the firm. The principle established in that case admits the complainants' position in this case to be a correct one. To effectuate the same sort of equity, it is held by our court that the widow of a member of a firm is not entitled to dower, nor his heirs to an inheritance, in lands standing in his name, purchased with the funds of the partnership and needed for partnership purposes. *Buffum* v. *Buffum*, 49 Maine, 108. Essentially the same principle is recognized in a class of litigations arising between the sellers of goods and the creditors of the purchasers, where the goods are obtained by the purchasers by means of false pretenses. In such cases the equity of the seller is superior to that of the attaching creditor. *Ayers* v. *Hewett*, 19 Maine, 281. Substantially the question at bar is quite elaborately and cogently argued, favorably to the present complainants, by SHEPLEY, J., in *Warren* v. *Ireland*, 29 Maine, 62, although the case was decided upon other grounds, and by WALTON, J., in *Carter* v. *Porter*, 55 Maine, 337, 343.

The present case must not be confounded with a class of cases in this state, in which it has been held that the title of an execution creditor, under a levy upon the real estate of his debtor, is not affected by a notice of a prior conveyance not recorded, the creditor having no knowledge thereof at the time of his attachment upon his writ; as was decided in *Stanley* v. *Perley*, 5 Maine, 369. See *Emerson* v. *Littlefield*, 12 Maine, 148. Those cases must be regarded as exceptional, and are decided upon the peculiar language of our recording acts. R. S., c. 73, § 8, declares that "no conveyance . . . will be effectual against any person, except the grantor, his heirs and devisees, and persons having actual notice thereof, unless the deed is recorded as herein provided." This language has been regarded as prohibitory. It is clear and positive. Massachusetts has a similar statute, and her court has made similar decisions.

*Woodward* v. *Sartwell,* 129 Mass. 210; and cases cited. But the Massachusetts and Maine cases, upon even what we call an exceptional phase of the question, find not much support in the decisions of other courts.

We think the principle contended for in the present case by the complainants is admitted by most courts that have any chancery jurisdiction. Says the court, in *Williams* v. *Fullerton,* 20 Vt. 346, "The general rule that trust property is not liable to be levied upon and sold for the debt of the trustee, will hardly be questioned by any one." The remarks upon this question by the same court in *Hackett* v. *Callander,* 32 Vt. 97, are valuable enough to be to some extent quoted. It is there said : "There is an obvious difference in the equities of a subsequent *bona fide* purchaser of land without notice of a trust, and of a creditor who attaches to secure an antecedent debt. The purchaser advances his money to buy the land. He gives a new consideration. He parts with a new value upon the credit of the apparant record title. The attaching creditor merely seeks to secure an old debt. He advances nothing upon the strength of the record title. He is not made worse by relying upon it. The omission of the real owner to record his deed has not been the means of depriving him of any value. It is for these reasons that courts generally have treated them as standing upon equities materially different."

The following American authorities may be said to support the complainants' side of this question, and some of them very explicitly and strongly so. *Bostick* v. *Keizer,* 4 J. J. Marsh, 597; *Manley* v. *Hunt,* 1 Ohio, 257; *Vandermark* v. *Jackson,* 21 Kan. 263; *Plant* v. *Smythe,* 45 Cal. 161; *Ells* v. *Tonsley,* 1 Paige, 280; *Padgett* v. *Lawrence,* 10 Paige, 170; *Moger* v. *Hinman,* 3 Ker. 180, and cases there cited; *Arnold* v. *Patrick,* 6 Paige, 310; *McCann* v. *Taylor,* 10 Md. 418; *Elliott* v. *Armstrong,* 2 Blackf. 198; *Baker* v. *Copenbarger,* 15 Ill. 103; *Davis* v. *Garrett,* 3 Ired. 457; *Piatt* v. *Oliver,* 2 McLean, 267; *Cox* v. *Milner,* 23 Ill. 476; *Savery* v. *Browning,* 18 Iowa, 246; *Reed* v. *Ownby,* 44 Mo. 204. Drake Att. 6 ed. § 234. Most of the English cases support the same view.

*Laughton* v. *Horton*, 1 Hare, 549; *Loge* v. *Lyseley*, 4 Sim. 70. Among the effective decisions upon the subject matter, is the case of *Whitworth* v. *Gaugain*, 3 Hare, 416. In that case SHADWELL, V. C., draws this distinction between the right of the purchaser and that of the creditor: "In one case the party contracts for a specific thing — in the other he merely takes a judgment, that gives him nothing more than a right to that which belongs to his debtor." Upon these authorities, English and American, and for the soundest reasons, we are brought to the conclusion that the complainants' position in the case at bar must be sustained. Equity disdains to take the property of one man to pay another's debt.

But the respondent contends that the facts screen him from the operation of the general rule. Of course, there may be exceptions to this doctrine or rule. An exception might, perhaps, arise in a case where a creditor, relying upon his attachment and record, without notice of the trust, has surrendered other securities, or given new value or consideration in some way. Counsel says that the respondent could have attached personal property, instead of land, had he known of the trust. It does not, however, appear that he forbore to attach goods for the reason that he attached land, or that he made any inquiry into the situation of either kind of the debtor's property. We think the circumstances of this case do not establish an exception.

The present case only requires us to decide whether an *attachment* shall be vacated. We are not called upon to say what the situation of the parties would be, if the creditor had actually levied an execution before the bill of complaint was filed. That question cannot be decided by us here.

But it may not be amiss to remark that the great bulk of the cases recognize no distinction between levies and attachments, in making an application of the rule. The point is exhaustively discussed in the case of *Hart* v. *Farmers Bank*, 33 Vt. 250, in which there is an intimation that equity might accord to the levying creditor the amount of the costs of making the levy. In this connection, *vide* R. S., c. 76, § 7, and the peculiar wording of c. 73, § 12.

Then comes another objection to the bill, urged by the respondent. The evidence of the case is Bovey's deposition. He swears that the property, upon which the attachment rests, was purchased with the funds of the trust estate. He says, however, that, when he received the moneys of the estate, instead of keeping them separately, he mingled with them some small amount of money of his own. The respondent contends that this act obliterated the trust fund as a trust fund, and that its identity has not been in any part regained. We do not agree with the respondent in this position.

The mere act of commingling different moneys does not necessarily prevent identification. It may make it difficult. The question is met in 2 Perry's Trusts, (second ed.) § 837, thus: "If trust money is mixed in the same parcel with the trustee's own money, it may be said that the trust money has run into the general mass and has become absorbed, and that the *cestui que trust* has no lien; but such cannot be the case. Although every identical piece of coin cannot be ascertained in a given mass, yet there being so much trust money in the parcel, the *cestui que trust* is entitled to so much of it. If a trustee deposits trust moneys in bank to his own credit, the court will disentangle the accounts, and give the *cestuis que trust* what belongs to them." This doctrine has lately undergone a most exhaustive and masterly examination in England in the case of *Knatchbull* v. *Hallett*, (*In re Hallett's estate*) L. R. 13 Chan. Div. 696. And that case, in turn, and its doctrines have been elaborately considered and emphatically endorsed in the later case of *National Bank* v. *Insurance Co.* 104 U. S. 54. In the English case it is determined that, if money held by a trustee has been paid into his private account at his bankers, the *cestui que trust* can follow it, and has a charge on the balance in the bankers' hands. It was further held, that the rule attributing the first drawings out to the first payments in, does not apply excepting as between the moneys of different *cestuis que trust*, whose moneys are commingled by the common trustee, and that, as between the individual funds and trust funds, the

drawer must be taken to have drawn his own money in preference to the trust money.

Some passages in the reasoning of the judges in that case, upon the general proposition that mere mingling of moneys will not dissipate a trust, are exceedingly satisfactory. JESSEL, M. R., says: "Supposing the trust money was one thousand sovereigns, and the trustee put them into a bag, and by mistake, or accident, or otherwise, dropped a sovereign of his own into the bag. Could anybody suppose that a judge in equity would find any difficulty in saying that the *cestui que trust* has a right to take one thousand sovereigns out of the bag? I do not like to call it a charge of one thousand sovereigns on the one thousand one sovereigns, but that is the effect of it. It would make no difference if, instead of one sovereign, it was another one thousand sovereigns. But if instead of putting it into his bag, or after putting it into his bag, he carries the bag to his bankers, what then? According to law, the bankers are his debtors for the total amount; but if you lend the trust money to a third person, you can follow it. If in the case supposed the trustee had lent the one thousand pounds to a man without security, you could follow the debt, and take it from the debtor. If he lent it on a promissory note, you could take the promissory note; or the bond, if it were a bond. If, instead of lending the whole amount in one sum simply, he had added a sovereign, or had added five hundred pounds of his own to the one thousand pounds, the only difference is this, that instead of taking the bond or the promissory note, the *cestui que trust* would have a charge for the amount of the trust money on the bond or promissory note. So it would be, on the simple contract debt (due from the banker). If you could not sever the debt into two, so as to show what part was trust money, then the *cestui que trust* would have a right to a charge upon the whole. Therefore, there is no difficulty in following out the rules of equity and deciding that you can follow the money." He further says: "When we come to apply the principle to the case of a trustee who has blended trust moneys with his own, it seems to me perfectly plain that he cannot be heard to say that he took away the trust money when he had

a right to take away his own money. The simplest case put is the mingling of trust moneys in a bag with money of the trustee's own. Suppose he has a hundred sovereigns in a bag, and he adds to them another hundred sovereigns of his own, so that they cannot be distinguished, and the next day he draws out for his own purposes one hundred pounds, is it tolerable for anybody to allege that what he drew out was the first one hundred pounds, the trust money, and that he misappropriated it, and left his own one hundred pounds in the bag? What difference does it make if, instead of being in a bag, he deposits it with his banker, and then pays in other money of his own, and draws out some money for his own purposes? Could he say that he had actually drawn out anything but his own money?" There is a lucid exposition of the same doctrine by CHURCH, Ch. J., in *Van Alen* v. *American Bank*, 52 N. Y. 1.

Now comes the question, how can we identify the purchase-money that went into the real estate in controversy as money of the trust estate? The trustee testifies that he made the purchase with the estate's money; that the money came from the sale of bonds which he had held for four years; that the bonds were bought with his ward's money; that he had a very little money of his own at the time; that he had been county treasurer, and his county accounts had been settled yearly; that he purchased no bonds for any other estate; and that when he purchased these bonds for his ward, he had but little other money. Can there be any doubt that the bonds belonged to the estate? If the identity of the fund was lost for a time, does it not clearly reappear? Here is the intention and the act. By this executed intention so much money became appropriated to his ward's estate. The trust became impressed upon and attaches to the bonds. Equity finds the ear-mark upon them. If he purchased the bonds for the estate and as its property could he afterwards repudiate the act? As between himself and his ward, could he deny the ward's ownership? And we must bear in mind that the creditor's right cannot be greater than his right. The creditor stands in the place of his debtor. He merely steps into his shoes. He only takes the property of his debtor, subject

to every liability under which the debtor holds it. Would equity, then, say that the bonds really belonged to the trustee rather than to the beneficiary?

It matters not that the trustee did not buy the bonds with the very dollars received into his hands from the trust estate. Nor was it necessary to communicate the fact of his purchase to any one. It is seen from the doctrine already quoted, that the want of these acts does not alter the fact. Of course, the existence of them might make the proof of the fact more conclusive. In *Van Alen* v. *American Bank, supra,* it was held to be immaterial whether a trustee deposits the identical moneys received from the trust, or substitutes other moneys therefor. It is there said by CHURCH, Ch. J. : "My agent collects one hundred dollars rent for me and puts the bills in one pocket and takes the same amount from another pocket and deposits it and notifies me. Are my rights gone by the change of money?" Cannot a trustee borrow of his ward's funds and restore them again? When he separates the amount, to be returned, from his general assets, does not the trust attach again? Suppose I hold four thousand dollars of your money to purchase certain bonds with, and I use your money for my own purposes, and afterwards with my own money purchase the bonds for you, are the bonds in equity your property or mine, as soon as purchased? The question is its own answer. A trust may be declared without passing the possession of the property to the *cestui que trust* or notifying him of the trust. *Martin* v. *Funk,* 75 N. Y. 134; *People* v. *Merchants and Mec. Bank,* 78 N. Y. 273; 1 Perry's Trusts, § 105.

There is no occasion of our adopting the doctrine of any of the cases cited by us, further than may be required to sustain the bill in the present case. To that extent we go. The doctrines herein enunicated do not necessarily clash with the decision in *Goodell* v. *Buck,* 67 Maine, 514. In that case it did not appear that all the money was not drawn from the bank after the trust money was deposited. The facts may have been rather closely construed by the court, but the opinion turns upon a finding of fact, "that it did not appear by the facts agreed that

this credit (money in bank) was made up, in any part, of the money received from the earnings of the ship."

*Bill sustained.*

APPLETON, C. J., BARROWS, DANFORTH and VIRGIN, JJ., concurred.

WALTON, J. I concur in holding that, if the guardian of a minor mingles his ward's funds with his own, or uses them in his business, he may afterward appropriate from his own funds a sum equal to what is due from him to his ward, and invest it in bonds or other property, taking the title to himself, but intending to hold it in trust for his ward, and that equity will protect such property against the general creditors of the guardian. And I understand the opinion of Judge PETERS to go no further than that. I therefore concur. Such a decision is not in conflict with *Goodell* v. *Buck*, 67 Maine, 514, nor *Steamboat Company* v. *Locke*, 73 Maine, 370. In these cases no such separation or investment had been made. The funds remained mingled, and their identity thus destroyed, when the attempts to fasten a trust upon them were made.