CHARLES H. WITHNELL ET AL. V. MARTHA A. WITHNELL ET. AL.

FILED JULY 3, 1903.   No. 12,919.

1. **Tenant by Curtesy.** Plaintiffs' mother died in 1883, seized in fee of real property in this state, leaving their father as surviving spouse. *Held*, That the father took a life estate in the property as tenant by curtesy.

2. **Sale by Life Tenant and Remainderman: PROCEEDS.** Plaintiffs and their father sold, for $40,000, real property in which he held a life estate and they the remainder. Plaintiffs received $24,000 and the father retained $16,000, and mingled it with his own prop-

erty. The father lived nine years after the sale, his age not being shown .in the record. *Held,* That these facts do not show plaintiff's ownership of the $16,000 retained and used by the father. *Held,* further, That the father's declaration of an intention to invest the same for the plaintiffs did not create a title thereto in them.

3. **Record and Evidence:** EQUITABLE TITLE. Record and evidence examined and *held,* not to show error. *Held,* further, That the trial court was justified in rejecting plaintiff's claim of equitable title to the property involved in the action.

ERROR to the district court for Douglas county: GUY R. C. READ, DISTRICT JUDGE. *Affirmed.*

*A. L. Knabe* and *Martin Langdon,* for plaintiffs in error.

*A. S. Ritchie* and *Carl E. Herring, contra.*

GLANVILLE, C.

This action is brought for the purpose of establishing title to certain property in the city of Omaha, in the plaintiffs, on the ground that the same was held in trust for them. The plaintiffs are all of the children of Mary Withnell· and John Withnell, deceased. The defendants are Martha A. Withnell, stepmother of the plaintiffs, and widow of the deceased, John Withnell, and the administrator of the estate of John Withnell. There is no allegation or proof of any facts to indicate that the administrator has any interest in the contest, and his connection therewith will be ignored in this opinion. After the introduction of plaintiffs' evidence, the trial court, upon motion of the defendant, found, "that no resulting trust had been shown by the said plaintiffs by clear and satisfactory evidence," and rendered judgment in favor of the defendants.

A motion for new trial was made and overruled, and the case is before us upon petition in error.

The facts clearly established by the pleadings and proofs are as follows: Mary Withnell and John Withnell were living with their family upon certain property in the city of Omaha, which we will designate herein as the Fifteenth

street property, prior to and at the time of the death of Mary Withnell, and at the time of her death in January, 1883, she was seized in fee of that property. John Withnell and his family continued to reside thereon until January, 1892. In the meantime, the defendant, Martha A. Withnell, was married to John Withnell in 1887, and resided with him from that time until his death, January 29, 1901.

On the 28th day of January, 1892, this Fifteenth street property was sold for $40,000, and the plaintiffs and John Withnell made the deed therefor, but John Withnell made the deal, and the money was paid to him. Of this sum of $40,000, $24,000 was, by some understanding among the parties, paid to the plaintiffs, $3,000 to each of them, unless possibly one of them may not have received her portion; and $16,000 was retained by the father. Previous to that time, those lots in the city of Omaha, which we will hereafter call the Farnam street property, were deeded to John Withnell, the consideration, as shown by the deeds, being $14,700, the deeds being dated August 4, 1887, and July 25, 1888.

Almost simultaneously with the receipt of the last half of the purchase money for the Fifteenth street property, John Withnell commenced the erection of a home on the Farnam street property, into which he afterward moved with his family. April 4, 1894, this Farnam street property was sold, the consideration named in the deed being $40,000. It was at the time incumbered by mortgages to the extent of $9,000, and in exchange, or part payment therefor, the property involved in this action, known as the St. Mary's avenue property, was taken for the consideration of $15,000. There is no pleading or proof as to how, or in what form, the other portion of the consideration was received. It is unequivocally alleged in the petition, and admitted in the answer, that John Withnell died seized in fee of the St. Mary's avenue property. It is, however, in another part of the petition alleged:

"That John Withnell, deceased, did take the title to said property last aforementioned (the St. Mary's avenue prop-

erty), in the name of himself and Martha A. Withnell, his second wife, and that the title to said property so remained and was of record at the time of the death of the said John Withnell."

And the allegations of that paragraph of the petition in which the foregoing is contained are admitted generally by the defendants. The proof shows that the deed was taken to the husband and wife, and there is no allegation or proof of any change of title thereafter. This St. Mary's avenue property is incumbered by a mortgage made by John and Martha A. Withnell, to the extent of $2,000.

Aside from what appears as above stated, there are matters in dispute. The plaintiffs in their petition allege as follows:

"That on the 28th day of January, A. D. 1892, these plaintiffs sold said property aforementioned (the Fifteenth street property) to one Bartholomew Scannel, in consideration of the sum of forty thousand ($40,000) dollars; that immediately thereafter, these plaintiffs handed to the said John Withnell the sum of sixteen thousand ($16,000) dollars, without relinquishing their rights thereto, and upon the express understanding and verbal agreement with the said John Withnell, that he, the said John Withnell now deceased, should take said money aforesaid, and invest it for the benefit of these plaintiffs.

"Plaintiffs further allege that the said John Withnell, deceased, thereupon, afterwards, did invest said money on or about the 2d day of July, A. D. 1892, in a residence building upon (here is described the Farnam street property) and in improvements upon said property."

The proof does not correspond with the first allegation, and, in fact, clearly establishes that the $16,000 were never paid to the plaintiffs, nor in any manner ever placed in their possession, nor came under their control. Neither does it establish the fact that they alone sold the property, for John Withnell necessarily joined in the deed for the purpose of conveying his interest therein, which was a life estate as hereafter shown, and it was his life estate, to-

gether with their remainder, that was sold by them and their father.

As to the use of the $16,000 in the erection of the improvements upon the Farnam street property, we are of the opinion that the proof sufficiently sustains this allegation, if the title of the plaintiffs to said $16,000 is sufficiently established by the proof.

Again it is alleged by the plaintiffs that the St. Mary's avenue property is of the value of $8,000; this is denied by the answer, which alleges that its value does not exceed $4,000. No evidence as to its value appears in the bill of exceptions.

There is also an allegation in the petition that during her lifetime, Mary Withnell sold certain real estate, "and realized therefrom the sum of $5,500, which said sum of money, without relinquishing her right thereto, she handed to the said John Withnell, deceased, to be invested for her, and that the said John Withnell did invest said money in the following described property"—then follows the description of the Farnam street property. As to this allegation, it appears by the evidence that the property mentioned was sold in 1882; that Mary Withnell died in 1883; and that the Farnam street property was purchased in 1887 and 1888. It further appears that the consideration for the property sold in 1882 was but $4,050 above the incumbrance. There is absolutely no evidence to trace any of this money into Mr. Withnell's hands, or into the Farnam street property, unless it be that one witness testified to being present a few days before the death of Mary Withnell, when she stated to her husband, "You have $8,000 of mine in your possession, and that belongs to the children," and that he said, "Yes, Mary, that is right." And the testimony of the son-in-law, E. D. Bellis, wherein he stated that John Withnell had, on one occasion, told him that he had some money that Mrs. Mary Withnell had left in his hands, a portion of which he had invested with the firm of Withnell Brothers, and had drawn out from Withnell Brothers this amount (witness did not remember what amount) to-

gether with what the profits had been on it, and he had bought two lots on Farnam street. This conversation is alleged to have taken place in 1892. This evidence is insufficient to establish any trust in the unimproved lots on Farnam street in favor of the children because of ownership of the money paid therefor, and if any trust in either the Farnam street property, or the St. Mary's avenue property, resulted in their favor, it must be because of their ownership of the $16,000 retained by their father.

It is contended by plaintiffs that this money belonged to them, not that their title thereto resulted from any contract with their father, or gift thereof by him, but that as a matter of law, their mother having died seized of the property for which this money was received, the money became their property, and that their father received and held the same in trust for them. If they can not prevail in this contention, there is no hope of their establishing a trust in the property in dispute. If the money belonged to the father, his promise to invest it for them would not pass the title to them; it would not be good as a gift *inter vivos,* because it was never delivered to the plaintiffs or invested in their name. If he had joined in the deed, and permitted the children to collect and retain the entire consideration, that might have been good as an advancement, but that was not done. As a matter of law, when Mrs. Mary Withnell died seized in fee of the Fifteenth street property, the title vested *eo instanti* in John Withnell for life, as tenant by curtesy, with remainder to the plaintiffs. Section 29, chapter 23, on decedents, in our statutes, as it stood prior to the amendment of 1887, provided that:

"When any man and his wife shall be seized in her right of any estate or inheritance in lands, the husband shall, on the death of his wife, hold the lands for his life, as tenant thereof by curtesy."

Nothing in the bill of exceptions or the pleadings shows the age of John Withnell at any time. It is therefore impossible to determine his expectancy under the Car-

lisle table.; he died January 29, 1901, nine years and a day after the date of the deed to the Fifteenth street property. He was in fact, then, the owner of a life estate in the property which would have lasted for nine years.

Had the parties recognized his right to the use for life of the entire $40,000 in lieu of his life estate in the property sold, and the whole sum had been left with him in recognition of this right, we are of the opinion that he would have been trustee for the remaindermen.

In *Cheshire v. Cheshire,* 2 Ired. Eq. (N. Car.) 569, it is said:

"A court of equity has invariably entertained a bill by one, entitled to a personal chattel in remainder after a life estate, to have the property secured, when it is alleged in the bill that it is likely to be lost by any means whatever, and when the particular property has been converted into another species of property by the tenant for life, or those who claim in privity with him, the remaindderman may elect to follow and take the fund in its changed form."

The same rule is announced in *Hunter v. Yarborough,* 92 N. Car. 68.

But the $40,000 was not so left with the father, but was separated into two funds, $24,000 and $16,000. The present worth of $40,000 due in nine years, computed on the basis of seven per cent. simple interest, is in the neighborhood of $24,500, while compounding the interest, with annual rests, it is something less than $22,000, making the value of the father's life estate from $15,500 to $18,000.

It can not be supposed under the evidence that John Withnell would be willing to forego his legal interest in this property. It is shown by the plaintiff's witnesses that at that time he was not making money in his business, and it is not shown that he had any other tangible property, except the unimproved lots on Farnam street. The fact that the $24,000 were paid to the children and recognized as theirs, and that $16,000 were retained by

the father, leads us to the belief that the $16,000 were
so retained by him as the agreed value of his interest in
the property, computed upon some basis agreed upon
between him and the children, and that the money, in
fact and in law, was the property of the father. If this
is correct, then no promise, on his part, to do anything
with the property for the benefit of the children, would
have the effect of placing the title thereto in them, until
their title was made good by some delivery or invest-
ment in their name, neither of which ever took place.
A resulting trust can no more be *created* by an oral con-
tract or oral declarations of holding the property in trust,
than can an express trust be so created; a resulting trust
in land is created by operation of law, and only because
of being created by operation of law, does it constitute
an exception to the rule that a trust in land can not be
created or declared except in writing. Only the *facts* upon
which the *law* will raise the trust may be proved by
parol. Unless the money itself belonged to the children,
its investment in real property by their father did not
create a trust by operation of law. While oral decla-
rations of one in possession of a fund are admissible for
the purpose of helping to trace the fund when its trust
character is established, and also as evidence tending to
establish such character by way of admission, yet they
can not alone create ownership in the supposed *cestui que
trust,* or deprive the real owner of his right thereto, unless,
because of the circumstances, they create an estoppel.

Defendant has contended that, under the pleadings and
evidence, if any trust is claimed and shown, it is an ex-
press trust, and void under the statute of frauds, because
by parol, and that, there being an express trust, no result-
ing trust can be raised. These results do not necessarily
follow. An express trust in the $16,000 fund could be
created by parol contract if the plaintiffs owned the fund,
and then, the fund being held under express trust, if
it was converted by the trustee into other property, and
the title thereto taken in his own name, a resulting trust

would attach to the property in which the fund was invested.

A very common case of resulting trust is where one holding a fund under an express trust, either with the duty of holding the fund intact, or with power of discretionary investment, invests the trust fund in his own name, and the law raises a resulting trust in the acquired property because of the ownership of the fund, notwithstanding it was originally held under an express trust.

All that we can say for the most favorable evidence introduced by the plaintiffs, is that it tended to establish a promise of their father to invest the $16,000 for them, without any indication or specification as to what investments would be made; and some conversations thereafter indicating that he considered the Farnam street property, which was eventually sold for $40,000, as their property, or rather, perhaps, that their money was invested therein; together with some rather loose and illy proved conversations in which the St. Mary's avenue property was spoken of as theirs. The difference between the selling price of the Farnam street property, and the incumbrance thereon added to the price of the St. Mary's avenue property, is $16,000. If by any construction of the evidence it will be sufficiently established that the original $16,000 fund was the property of the children, and that their father had promised to invest the sum for them without specifying the investment, he could undoubtedly dedicate to the trust fund any of the proceeds of the sale of the Farnam street property he saw fit, either the St. Mary's avenue property, or other portion of the consideration. That he did not dedicate the St. Mary's avenue property to such trust fund, is evidenced by the fact that he took the title thereto, jointly with his wife, the defendant, and then, with her, incumbered it by mortgage.

The lots on Farnam street for which he had paid the consideration of $14,700 appear to have been clear in his name after his marriage with the defendant, and she

had an interest therein; her signature to the deed was needed to bar her dower, and was indispensable to convey the homestead interest; moreover, there is no evidence or pleading to show that he might not at that time, make a valid advancement to her, and we think that after causing an interest in this property to be conveyed to her, when it was taken in exchange for their prior home and property, he could not then dedicate it to the trust fund so as to destroy her interest therein.

It is urged by defendant that the $16,000 fund must be directly and specifically traced into the property sought to be impressed with the trust. While under certain conditions this is the rule, yet, when the trust is clear, and the trustee has dissipated the trust fund, an instant and continuing duty rests upon him to restore the fund, and he may do so by an appropriation of any of his own property to the trust estate. In *Houghton v. Davenport,* 74 Me. 590, it is said:

"A trustee need not purchase property with the very dollars received from the trust fund, nor give any notice to the *cestui que trust* of the purchase, nor make any delivery to him, in order to create a trust estate. If he uses or loses the trust fund, he may afterwards, by some proceeding or act of his own, substitute his own money therefor, and the substituted money will be subject to the same trust that was imposed upon the money by the trustee used or lost. If a trustee commingles trust money with money of his own, and afterwards separates from the common fund a proper portion of it as the property of the *cestui que trust,* and with such portion of the fund, purchases real estate in his own name, the trust becomes impressed upon and attaches to the money thus set aside and the real estate purchased with such money."

But we think no separation and dedication is proved in this case.

It is worthy of note that the deed to the St. Mary's avenue property, carrying the title to plaintiffs' father and stepmother, was at once recorded, yet, though his

health was known to be failing, there does not appear to have been any attempt made to secure a conveyance in recognition of the alleged trust.

Upon the whole case we think the trial court was right in holding the evidence insufficient to establish a resulting trust in favor of the plaintiffs in the property in question.

Complaint is made, and error assigned, because the court ruled out certain evidence offered by the testimony of William Withnell. If the ruling of the court thereon were error, it is without prejudice, for the matter offered to be proved by this witness was well established by the evidence of another.

Complaint is also made that the court erred in admitting a certain chattel mortgage in evidence as an exhibit during the cross-examination of a witness. The matter was within the discretion of the court, and moreover, the contents of the chattel mortgage had already been read into the record upon the cross-examination, and its admission as an exhibit could not change its force.

We recommend that the judgment of the district court be affirmed.

BARNES and ALBERT, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.