———o———

JONATHAN G. FELLOWS, Appellant, *vs.* REMUS WISE, Respondent.

1. *Land titles—Purchase—Notice putting on inquiry, etc.*—If a purchaser of land has such information touching certain facts as would put an ordinarily prudent man on inquiry in relation thereto, he is affected with notice,

2. *Practice, civil—Instructions, etc.*—Instructions not based on evidence, should not be given.

*Error to Linn Circuit Court.*

*A. W. Mullins*, for Appellant.

*W. H. Brownell and G. D. Burgess*, for Respondent.

NAPTON, Judge, delivered the opinion of the court.

This was an action of ejectment to recover a tract of military bounty land in Linn County. The suit was commenced on the 27th of Sept., 1869.

The facts appearing at the trial, about which there was no dispute or contradictory evidence, were about as follows: One Moore, about 1857, having purchased of Talton Turner a tax title, for which he gave his note to said Turner, went into possession of the land in controversy. In 1859, the plaintiff, who then lived in Davidson county, Tennessee, and had some claim to this tract, came out to Missouri and negotiated with Moore for the purchase of said Moore's title and improvements, which resulted in the execution of a penal bond by Moore, binding him to convey to Fellows the land in controversy, together with all improvements on it, for the sum of $475, for which sum Fellows executed his note, payable on the 1st of March, 1860; and agreed also to pay to the estate of

Talton Turner, the further sum of $200 together with interest which was due by said Moore, to said Turner. This title bond was executed on July 30th, 1859, and was recorded in the Recorder's office of Linn county, on the 1st of August, 1859, but the acknowledgment was not taken according to law.

This money, the $475 due Moore, was all paid by Fellows or his agent, to Moore, previous to his death, which occurred in 1866, and in that year, the $200 due to Turner was also paid to Turner's executors, who executed a deed to Fellows.

In Sept. 1869, the County Court, on the application of plaintiff, ordered a specific performance on the part of Moore's administrator, and a deed was accordingly executed dated Sept. 20th, 1869. Previous to this, on the 29th of Dec'r, 1868, a deed was executed by the heirs of Moore, to one Brownlee—a quitclaim deed for the consideration of $450—and subsequently, another conveyance, not given in evidence, was executed by Brownlee to one Richardson or Vorce, or both; and the defendant is a tenant under this title.

The other testimony in the case, relates to adverse posses sion and actual notice, and need not be particularly stated, except so far as to determine the propriety of the instructions given by the court. There is really no question of adverse possession in the case. Moore's occupancy after his sale to plaintiff, and the new house he built in 1860 or 1861, were by the consent of the plaintiff, and as his trustee; and as there is abundant evidence of his disclaiming any title, and no contradictory evidence, except the hearsay testimony of his son-in-law that Moore said he drove Fellows off the place on one occasion, when Fellows was there after the war, with a handspike. Barton the agent of Fellows, states that Moore suggested to Fellows the necessity of his having a better house than the shanty then on the place, and Fellows told him to build one, and that if he wished to remove it afterwards he could do so.

In regard to notice of Fellows' title, by the purchasers from Moore's heirs, the testimony is very strong. It seems that Burgess negotiated this sale; that he advised Moore's heirs

that their title was bad as against Fellows, but that an innocent purchaser would prevail and could hold it, and therefore told them to sell for what they could get. This is the statement of the son-in-law of Moore and of Burgess himself who was examined as a witness. The sale to Brownlee was made by Burgess, with the understanding that Burgess was to have an interest in the land. There is no dispute that Burgess knew of the title of plaintiff. He admits it, and so the subsequent sale of Brownlee to Richardson was negotiated by Vorce, who was also a partner in the profits of this arrangement, and who well knew, as he says in his testimony, that Fellows had bought Moore's improvements and paid him for them, but knew nothing, as he says, of the title-bond.

The instructions given by the court it is useless to rehearse in detail. Those given at the instance of the plaintiff were correct, and put very fairly to the jury every question of fact which the issues presented. But the court gave six or seven for the defendant, totally at variance with the instructions for plaintiff, and not based upon any evidence in the case. The first instructions are based upon the well settled rule, that if a purchaser has such information as would put an ordinarily prudent man on inquiry, he is affected with notice; and then the last set of instructions require the jury to find that the purchaser must have actual notice of the prior deed or bond. The last instruction on the subject of adverse possession for two years, had no evidence to support it. This suit was brought in September, 1869, and no disclaimer of plaintiff's title by Moore's heirs occurred, so far as the proof shows, until the deed made on the suggestion of Burgess in December, 1868. This might be regarded as a repudiation of the trust on the part of Moore's heirs; but the consummation of the plaintiff's title as a legal one never occurred till September, 1869, the same month in which suit was brought.

The judgment will be reversed, and the cause remanded. The other judges concur.