Mason v. Black.

MASON *et al.*. *Appellants*, v. BLACK.

1. **Deed.** The evidence in this case held sufficient to show the execution of a deed to plaintiffs' ancestor, and its delivery by the grantor to the ancestor's agent for him.

2. **Equity** : LOST DEED. Where title to land is vested in one by a deed which is lost or destroyed before being recorded, a court of equity will protect the rights of the grantee by divesting the grantor of any claim to the land, and by establishing the title in the grantee.

3. **Muniments of Title** : NOTICE. The law imputes to a purchaser of land a knowledge of all facts relating to it appearing at the time of his purchase upon the muniments of title, which it was necessary for him to examine in order to ascertain the sufficiency of such title.

4. **Quit-Claim Deed** : INNOCENT PURCHASER. One is not an innocent purchaser who for a nominal consideration paid by him accepts a quit-claim deed for land, and is informed at the time by the grantor

| 87 | 329 |
| 98 | 353 |
| 99 | 18 |
| 87 | 329 |
| 37a | 447 |
| 87 | 329 |
| 40a | 425 |
| 87 | 329 |
| 103 | 230 |
| 87 | 329 |
| 108 | 574 |
| 87 | 329 |
| 110 | 137 |
| 87 | 329 |
| 117 | 297 |
| 87 | 329 |
| 55a | 491 |
| 87 | 329 |
| 60a | 309 |
| 87 | 329 |
| 131 | 112 |
| 131 | 155 |
| 87 | 329 |
| 78a | 633 |
| 87 | 329 |
| 154 | 149 |
| 87 | 329 |
| 169 | 3212 |

therein, that he does not own the property and makes no claim to it.

5. ———— : RECITALS : NOTICE.   One who purchases land and takes the same under a chain of title containing a quit-claim deed of record, in which the grantor therein recites that "it is intended to convey by these presents all title of which I am vested at this day, and not to invalidate any sale heretofore made, if any exists," is put on inquiry by such recital as to the sufficiency of the quit-claim deed to pass the title to the land.

6. ———— : ———— : ————.   Such quit-claim deed, it being of record, constructively notified all persons that the grantor therein was only conveying such title to the land as he had when he made the deed, and that, in his opinion, he had previously conveyed all his title.

7. **Limitation.**   The plaintiffs in this case held not to be barred by the plea of the statute of limitations.

8. **Equity :** CLOUD. ON TITLE.   A suit to remove a cloud on title cannot be maintained when the defect appears on the face of the conveyances through which the opposite party claims title.   But when such claim of title is valid upon the face of the conveyances, and the defect can only be made apparent by extrinsic evidence, particularly if that evidence depends on oral testimony to establish it, a case is made for a court of equity to remove the cloud from the title.

9. ———— : ————.   The rule that one not in possession cannot maintain a suit in equity to quiet title, or to remove a cloud therefrom, applies where the complainant has the legal title, because he may then bring ejectment for possession.   But where the complainant has only the equitable title, and the legal title is in the occupant, it is otherwise.   In the latter case, the complainant being unable to sue at law, because he is without the legal title, must assert his rights in a court of equity.

10. **Equitable Title :** STATUTE.   In such equitable suit, the court may, under the statute (R. S., sec. 3692), pass the title to plaintiff without any act to be done by defendant, and may also (R. S., sec. 3693), issue a writ of possession to put the former in possession.

11. **On re-hearing,** the judgment in this case so far modified as to decree the title to be in plaintiffs without annulling certain conveyances executed by persons not parties to this action.

*Appeal from Daviess Circuit Court.*—HON. JOHN C. HOWELL, Judge.

: . .
REVERSED.

*William M. Rush, Jr.*, for appellants.

(1) When title to real estate has been vested in a. grantee by a deed which has been lost or destroyed without being recorded, equity will establish the title in the grantee. *Wright v. Christy*, 39 Mo. 125 ; *Wynn v.. Cox*, 43 Mo. 304. (2) A quit-claim deed passes only such title as the grantor has. *May v. LeClare*, 11 Wall. (U. S.) 217 ; *Ridgway v. Holliday*, 59 Mo. 444 ;. *Stivers v. Horn*, 62 Mo. 473 ; *Mann v. Best*, 62 Mo. 491. (3) The law imputes to a purchaser a knowledge of all facts relating to the same land, appearing at the time of his purchase upon the muniments of title which it is necessary for him to investigate in order to ascertain the sufficiency of such title. 3 Washb. Real Prop. (4 Ed.) 327. (4) Where a purchaser cannot make out his title, but by a deed which leads him to another fact, he shall be presumed to have knowledge of such fact. 1 Story's. Eq., secs. 400 and 408 ; *Digman v. McCollum*, 47 Mo. 372 ; *Rhodes v. Outcalt*, 48 Mo. 370 ; *Speck v. Riggin*, 40 Mo. 405 ; *Vaughan v. Tracy*, 22 Mo. 421 ; *Scott v.. McCulloch*, 13 Mo. 13 ; Hilliard on Vendors, sec. 408. (5) One who has notice of one fact is chargeable with notice of all other facts to which it leads. *Slayton v.. Green*, 4 John. Ch. 38 ; *Nute v. Nute*, 41 N. H. 60 ; *Maupin v. Emmons*, 47 Mo. 304 ; *Eck v. Hatcher*, 58. Mo. 235. (6) Where one purchases land of another who he thinks has title, but is informed by the other that he makes no claim to it, and yet, for a nominal consideration, receives a quit-claim deed therefor, such a one is not an innocent purchaser. *Kearney v. Vaughn*, 50 Mo. 284 ; *Foster v. Breshear*, 55 Mo. 22 ; *Stoefel v. Schroeder*, 62 Mo. 147. (7) Notice to an agent is notice to the principal. *Jackson v. Sharp*, 9 Johns. 163 ; *Rhodes v. Out-*

*calt*, 48 Mo. 370 ; *Barnes v. McClinton*, 3 Pa. St. 67 ; *The Distilled Spirits*, 11 Wall. 356.

*Shanklin; Low & McDougal* for respondent.

(1) The evidence is insufficient to show that the land was purchased of Turney by Cauthorn, as the agent and with the money of and for Mason. Nor does it appear from the proof that Turney executed a deed therefor to Mason, and, if so, that he ever delivered the deed to Cauthorn. (2) Plaintiff's action is barred by the statute of limitations. The land was entered in 1856 ; the title emanated from the government, as shown by the date of the patent offered in evidence by plaintiffs, on the ninth day of June, 1858 ; this suit was commenced in 1879. If the land was in fact purchased and paid for by Mason, yet as no deed was "made, executed and delivered" therefor, Turney then became as to this land the trustee of a resulting trust. On the face of the petition the action was barred by limitation, and having the title through Turney, defendant may now make any defence that he could have made. Under these facts, conceded only for the argument, Turney became and was the trustee of a resulting trust. *Valle v. Bryan*, 19 Mo. 423 ; *Stevenson v. Smith*, 7 Mo. 610 ; *Kelly v. Johnson*, 28 Mo. 249. There was no privity, no agency as between Turney and Mason, and the latter had the unquestioned right to bring this suit the day the alleged purchase was made, to declare and enforce the trust, and the possession of the land had nothing to do with it. *Smith v. Ricords*, 52 Mo. 581–2. This being an implied, or resulting trust, and the plaintiff's ancestor having failed, for more than ten years next after his cause of action accrued, to institute his suit to declare and enforce the trust, the patent title having emanated from the government in 1858, the statute of limitations is a complete bar. *Ricords v. Watson*, 56 Mo. 553 ; *Smith*

*v. Ricords*, 52 Mo. 581; *Keeton v. Keeton*, 20 Mo. 530; *Bobb v. Woodward*, 50 Mo. 95, 102. (3) The petition does not present a case for the removal of a cloud upon plaintiff's title, the proof showing that defendant was in possession under a deed. *Clark v. Ins. Co.*, 52 Mo. 272. (4) Neither Cauthorn nor defendant Black, are chargeable with notice of plaintiff's claim. Upon the question whether one has taken a deed without notice of a prior unrecorded deed, the burden of proof is always upon the party alleging bad faith. *Ryder v. Rush*, 102 Ill. 338; *Morris v. Daniels*, 35 Ohio St. 406. And the evidence must be of a character to satisfy the court that the party taking the second deed was guilty of a fraud. *Vest v. Michie*, 31 Gratt. 149. The notice of a prior conveyance, if implied, must not be merely a probable but a necessary inference from the facts proved. *McMahan v. Griffling*, 3 Pick. 149; *Comet v. Bertelsman*, 61 Mo. 118. Vague reports from persons not interested in the property will not affect the purchaser's conscience. *Dey v. Dunham*, 2 Johns. Ch. 182; *Colquitt v. Thomas*, 8 Ga. 258; *Rogers v. Hawkins*, 14 Ga. 116; 61 Mo. 118, 126. The record of a deed is notice of the facts which a reader may learn by an examination of the record, not of all which he might ascertain by an inquiry suggested by the record. *Taylor v. Harrison*, 47 Tex. 454; *Bell v. Twilight*, 23 N. H. 500; *Hunter v. Watson*, 12 Cal. 362; *Hutchinson v. Hartman*, 15 Kan. 133; *Miller v. Crittenden*, 2 Ia. 315. (5) The title of a *bona fide* purchaser of land is not affected by the fraud of the grantor or by notice to him. *Thult v. Bigelow*, 16 Mass. 406; *Bank v. Fletcher*, 44 Ia. 252; *Dickerson v. Evans*, 84 Ill. 451. (6) The plaintiffs and their ancestors have been guilty of such laches as to preclude their recovery. *Sullivan v. Ry.*, 94 U. S. 807; *Kelly v. Hurt*, 74 Mo. 561; *State, etc., v. West*, 68 Mo. 229.; *Bliss v. Prichard*, 67 Mo. 181.

EWING, C.—This was an action instituted on the twentieth day of August, 1879, by the plaintiffs as the sole heirs at law of William B. Mason, Sr., deceased, to divest the defendant of the title to the lands in controversy, and vest such title in plaintiffs. The substantial allegations of the bill are:

"That on the sixteenth day of July, 1856, plaintiffs' ancestor appointed one Geo. W. Cauthorn, as his agent to enter and purchase Missouri lands for him, and entrusted to his said agent large sums of money for that purpose; that on the day last mentioned, said Cauthorn, 'with some of the money so furnished, as aforesaid, and in pursnance of the agency aforesaid, purchased in behalf of, and for their said ancestor, of one Daniel M. Turney,' the lands in controversy, among other lands, and out of the money aforesaid paid to said Turney the purchase price thereof; and that said Turney thereupon made to deceased a deed for said land, and delivered the same to Cauthorn and his agent; that said deed was never recorded or delivered to their ancestor, or themselves. That on January 27, 1876, said Cauthorn, by false and fraudulent representation, procured from Turney a deed, whereby he remised, released, and quitclaimed to one Thomas B. Crowder, 'all the right, title, interest, and estate, that he had in and to said land,' with the following clause therein written : 'It is intended to convey, by these presents, all title of which I am vested this day, and not to invalidate any sale heretofore made, *if any exists;*' that said quit-claim deed was duly recorded February 9, 1876, and that thereafter, on June 26, 1877, said Crowder conveyed said lands by a deed '*with the usual and general covenants of warranty to the defendant.*' That Crowder, at the time of the execution of both these deeds, 'and the defendant, at the time and before the execution of the deed last aforesaid, had notice of plain-

tiffs' ancestor's title;' that neither Cauthorn, Crowder, nor Black, ever made any claim to the land until within ten years prior to the institution of the suit, and that the land was never occupied until after defendant's purchase; that the two deeds last aforesaid are a cloud upon plaintiffs' title, and concludes with a prayer for a divestiture of title apparently in defendant, and a decree for title in plaintiffs."

The answer was a general denial, except that defendant admitted possession under a claim of title; and then alleges that defendant "purchased said land and took possession thereof in good faith, believing that Crowder was the true owner thereof, free of all adverse claims and equities, and at the time of making said purchase he agreed to pay therefor the sum of nine hundred dollars, which is the full value of said land, and that said purchase price he paid to said Crowder on or about the twenty-sixth day of June, 1877, the sum of eight hundred and fifty dollars, all of which was paid before he had any notice of plaintiffs' claim, or that of said ancestor, W. B. Mason, to said land, and without any notice of said quit-claim deed, or the recitals therein, except such notice as is given constructively by the record of said deed."

The evidence at the trial was voluminous, and we do not think it necessary to cumber the record with it in detail. The plaintiffs offered a patent from the United States to Daniel M. Turney for the land described in the petition. Also a quit-claim deed from Turney to Thomas B. Crowder, filed for record the ninth of February, 1876. Various records of deeds and entries of public lands, and witnesses, and depositions were introduced, tending to prove, substantially, that Geo. W. Cauthorn acted as the agent of William B. Mason, deceased, the ancestor of plaintiffs; that Mason resided in Kentucky, and furnished Cauthorn large sums of money to enter and buy and sell lands for Mason, in Missouri, and that Cau-

thorn was Mason's only agent for that purpose in 1856, 1857, 1858 and 1859 ; that Cauthorn attempted to enter, as Mason's agent, a part of the land in controversy, which was cancelled for some reason, and in July, 1856, it was entered by Daniel M. Turney. That, including the land entered by Turney, and by Cauthorn, for Mason, in Daviess county, there were six hundred and eighty acres ; that four hundred and sixty acres had been sold by Mason in 1868, leaving two hundred and twenty acres, the record showing one hundred acres, in his name after the sale of the four hundred and sixty acres. That up to and including 1868, Cauthorn, as Mason's agent, had six hundred and eighty acres assessed as the land of William B. Mason, that assessment including the land in controversy, and that he, as such agent, paid the taxes thereon, and afterwards admitted to the witness, C. T. Mason, that his (Mason's) father owned two hundred acres of prairie and twenty acres of timbered land in Daviess county.

The evidence also tends to prove that plaintiffs had another suit for other lands in Daviess county against Thomas B. Crowder, included in the six hundred and eighty acres, and recovered one hundred acres, making five hundred and sixty of the six hundred and eighty claimed. That on December 7, 1872, Cauthorn wrote to Mason, the ancestor, for money to pay taxes on two hundred and twenty acres of land in Daviess county ; that on December 1, 1873, Crowder wrote to Mason that ''at the sale of delinquent lands in Daviess county, in October last, I bid off two hundred and twenty acres of land belonging to you for the taxes of 1872.'' That afterwards Crowder and Cauthorn refused to give the numbers of land to Milt. Ewing, Mason's attorney, on his application therefor. The quit-claim deed from Turney to Crowder contained the following clause : '' It is intended to convey, by these presents, all title of

which I am vested at this day, and not to invalidate any sale heretofore made, if any exists."

Amongst other things, Daniel M. Turney testified as follows: "In the fall of 1857 I moved to Ray county, Missouri, from Plattsburg, and knowing that I would be applied to, from time to time, for deeds, by parties for whom we had entered land in my name, I copied from this original entry book, a list of all entries of land in my name, *which I had not conveyed.* The original entry book was burned when Thomas E. Turney's office was burned several years ago. I have examined the list so made and *do not find the land in controversy on the list.* I met Cauthorn occasionally; he never mentioned this land to me, since the entry, up to the making of the quit-claim deed to Crowder. Cauthorn and 'Squire Provolt, a notary, came to my house with the quit-claim deed to Crowder. Cauthorn said I had never made a deed to any one for the land in controversy, and requested me to make a deed to *Crowder, as he had sold to him;* told him then I was under the impression that I *had conveyed it;* he insisted that I had not. I told him that I thought I had; don't know that I told him to whom I thought I had deeded it, but if I mentioned any one, it is *that I had deeded it to Mason;* that was where my thoughts were. The clause in the quit-claim deed was in my hand-writing, and *I inserted it simply because I thought I had deeded it to Mason, and wanted to protect him, and not be making two deeds to the same land. I refused to sign until I had inserted the clause."*

The evidence then shows that the deed from Crowder to Black, the defendant, was made June 26, 1877, and the evidence then tends to prove that a few months before, *Cauthorn* offered to sell the land to Black. That before the defendant bought, he and his uncle, J. W. Black, spoke of Cauthorn as Mason's agent for

entering land ; that defendant asked his uncle if Crowder was solvent. That prior to his purchase Black got an abstract to the title showing that Turney's deed to Crowder was a quit-claim deed. The evidence tends to prove that Cauthorn, in speaking of the land, said : "I never bought any other land from Turney except the one hundred and twenty acres in section nine, township fifty-eight, range twenty-nine, for any one," and that Turney never did any other business with Cauthorn. The evidence tends to prove that the ancestor, Mason, furnished a large sum of money to C. W. Lambeth, and by him to Cauthorn.

Daniel M. Turney testified : "My recollection is that I made the deed to Mason that day. I know the money was paid that day. We always cleaned up the business every day. There was no reason why deeds should not have been made ; it could have been done in five minutes, the clerk's office being just across the way. I have no recollection of Cauthorn's mentioning the matter from that day, until the day he came for the quit-claim deed to Crowder. I had no mind or thought that I was carrying that land for Cauthorn. Just as quick as possible, after entry, deeds were made, or certificate signed. If money was paid, deeds were made, even if we retained them. I never knew Cauthorn to be acting for any one but Mason. I know from what he told me and his doing business with Charles Birch, whose office was next door to me. Cauthorn had spoken to me about his insolvency. I would not have withheld from any one, making inquiry, information as to whom I believed I had deeded the land."

At the close of the evidence the plaintiffs asked leave to amend their petition by striking therefrom the following words : "That the two deeds last aforesaid are a cloud upon plaintiffs' title," which motion was refused, and plaintiffs excepted. Thereupon, the court, as it ap-

pears by its judgment of record, found for the defend-
ant for costs, and dismissed the plaintiffs' bill.

The bill of exceptions states: "And, thereupon, the
court found from the evidence that the land in contro-
versy was purchased with the money of William B.
Mason, and that Daniel M. Turney had conveyed the
same to said Mason, but dismissed the bill upon the
ground that the defendant, Black, had not sufficient no-
tice of the equities of plaintiffs' said ancestor, William
B. Mason, and that the bill was, in effect, a petition to
remove a cloud from plaintiffs' title, and could not be
maintained, as the defendant was in possession." The
plaintiffs then filed their motion for a re-hearing, because
the court erred in dismissing the bill upon the ground
"that defendant Black had no notice of the rights of the
plaintiffs' ancestor, and that the bill was an action to
remove a cloud upon the title of plaintiffs, and could
not be maintained unless the plaintiffs had possession."

I.  The evidence presented in the bill of exceptions
thoroughly convinces me that Mason, the ancestor of
plaintiffs, furnished Cauthorn money to enter and buy
lands as his agent; that as such agent he did buy lands
for him, and that he bought the land in controversy
from Daniel M. Turney, for Mason, and with his money.
What does the evidence mean if not this?  Turney, in
substance, shows that he entered the land for Mason at
the request of his agent, Cauthorn ; that the money was
paid at the time, and he was so strongly of the belief
that he had already conveyed the land to Mason, that
he refused to make even a quit-claim deed to Crowder,
at the request of Cauthorn, until he inserted in it a
clause that would notify all persons that he claimed no
title ; but, on the contrary, rather disclaimed the right to
sell.  Years after, when he believed he had conveyed to
Mason, Cauthorn comes with a quit-claim deed, and un-
dertakes to convince Turney that the title was still in him
and that he had not conveyed the land.  Turney swears

that Cauthorn had said nothing to him about this land from the time he entered it, until he came with the quit-claim deed. The whole of the evidence, taken together, convinces me that Turney was right in his belief that he had deeded the land to Mason, and that it was Mason's money paid to him by Mason's agent, Cauthorn, the evidence leaves no reasonable doubt in my mind. Turney says, in substance, that the money was paid on the day of the sale, and the deed made. What could he mean by saying the deed was made? Surely not that he made deed and put it in his pocket. No other conclusion can be reached than that the sale being made, and the money paid by the agent, Cauthorn, and the deed made, it would be, and was delivered to the agent who was then present, and had just paid the money. When A says: "I sold land to B, and he paid me for it, and I made a deed on the day of sale," he means, in common parlance, that he executed and delivered the deed. In the absence of anything to the contrary, it could mean nothing else. Delivery is as necessary as the making, but the proof of delivery, or what amounts to a delivery, is a different thing. I think the almost irresistible conclusion, from the evidence, is that the deed was made by Turney and delivered to Cauthorn on the day of sale.

II. The question then arises as to the sufficiency of the notice to defendant. Was there actual or constructive notice to him of the claim of plaintiffs, and the condition of the title to the land he was about to purchase? Or did he have such information, as in contemplation of law, would put a reasonable man upon inquiry? But, first, let us inquire whether, when title to real estate has been vested in a grantee by deed, which is lost or destroyed before being recorded, a court of equity will divest such grantor, or his heirs, of the title, and vest it in the grantee or his heirs. That question has been settled in the affirmative by this court, in *Schaumburg v. Hepburn*, 39 Mo. 125, where it was held that "where a

conveyance of land, executed and delivered, but not recorded, has been lost, a court of equity will protect the rights of the grantee by enjoining any sale by the heirs or representatives of the grantor, and by divesting them of any claim, and establishing the title of the grantee and his heirs."

Then as to the question of notice: Washburn, in his treatise on Real Property, states the rule to be that the law imputes to "such purchaser a knowledge of all facts relating to the same land, appearing at the time of his purchase upon the muniments of title which it was necessary for him to inspect in order to ascertain the sufficiency of such title." Again: "What would be constructive notice in such cases, may be said to be a knowledge by the purchaser of some fact which would put him upon inquiry, and require him to examine other matters that would generally unfold the true title." See, also, 1 Story's Eq., sec. 400; *Hamilton v. Nutt*, 34 Conn. 501; *Orrick v. Durham*, 79 Mo. 174, and authorities cited. In *Brush v. Ware*, 15 Pet. 93, the court says: "The question is not whether the defendant, in fact, saw any of the muniments of title, but whether he was not bound to see them. It will not do for a purchaser to close his eyes to facts; facts which were open to his investigation, by the exercise of the diligence which the law imposes. Such purchasers are not protected. When a purchaser cannot make out his title except through a deed that leads to a fact, he is affected with notice of that fact." See, also, 5 DeG., M. & G. 1; *Bacon v. O'Connor*, 25 Tex. 213. In *Mertins v. Jolliffe*, 1 Amb. 311, the same doctrine is held, when Lord Hardwicke, Chancellor, said "that where the purchaser cannot make out a title, but by a deed which leads him to another fact, the purchaser shall not be a purchaser without notice of that fact, but shall be presumed cognizant of it; for it is *crassa negligentia*, that he sought not after it." The same doctrine is main-

tained in *Van Doren v. Robinson*, 1 C. E. Green, 256 ; *Cox v. Milner*, 23 Ill. 476.

Again, in *Rhodes v. Outcalt*, 48 Mo. 370, this court says : "A notice is regarded in law as actual when the party sought to be affected by it knows of the particular fact in question, or is conscious of having the means of knowing it, although he may not employ the means in his possession for the purpose of gaining further information." \* \* \* In *Speck v. Riggin*, 40 Mo. 405, this court says : "Notice may be either actual or constructive. It is actual when the purchaser either knows of the existence of the adverse claim or title, or is conscious of having the means of knowledge. \* \* \* Constructive notice is a legal presumption and will be conclusive unless rebutted, and in many cases it cannot be gainsayed or denied, even by evidence of the absence of actual knowledge or notice." See, also, *Fellows v. Wise*, 55 Mo. 413 ; *Scott v. McCulloch*, 13 Mo. 13 ; *Muldrow v. Robinson*, 58 Mo. 331. In *Kearney v. Vaughan*, 50 Mo. 284, this court held : "A purchaser of land who buys of one who, as he supposes, has the legal title, but who informs him that, even if it be so, he does not own the property, and makes no claim to it, and for a nominal consideration obtains from him a quitclaim deed, cannot be called an innocent purchaser, and cannot be protected either in equity or under the registration act."

In the case of *Foster v. Holbert*, 55 Mo. 22, the evidence showed that when "Holbert applied to Dunn for a quit-claim deed, he told him that he had no claim to the land ; Holbert replied that the record showed no deed from him, and he then executed the quit-claim deed." In commenting on this evidence, Judge Adams said : "What took place between Dunn and Holbert, when he took the quit-claim deed, amounted to actual notice of the prior unrecorded conveyance by Dunn to Foster. Dunn told him he had no title, and under the cir-

cumstances that deed could convey only such title as he
had." Now what are the facts in this case, as far as the
defendant is concerned? In conversation with his uncle,
before the purchase, and in contemplation thereof, the
subject of Mason's entering land, and that Cauthorn was
his agent, and the solvency of Crowder was also dis-
cussed. That before the purchase Black got an abstract
of the title, which showed that Turney's deed to Crow-
der was a quit-claim deed. That some months before he
bought, Cauthorn had offered to sell him this land, and
said he would give him any kind of a title he wanted;
and the record of the deed from Turney to Crowder with
this clause in it: "*It is intended to convey by these
presents, all title of which I am vested at this day, and
not to invalidate any sale heretofore made, if any ex-
ists.*" This deed, being on record, is at least construc-
tive notice of its contents to defendant, whether he ever
saw it or not. It was his duty to see it. Take this evi-
dence, and it appears clear that, before the purchase, the
defendant had in his mind the question of the validity
of the title he was to get from Crowder, and hence
wished to know if Crowder was solvent, and could re-
spond in case the title failed. He was told that Crowder
was solvent. He had the fact called to his mind in the
conversation with his uncle, that Cauthorn had been
Mason's agent and had entered land for him. Why was
this question discussed unless it had some connection
with the trade then under consideration? Then the pe-
culiar clause in the quit-claim deed to Crowder from
Turney. What would be the natural inquiry suggested
by an examination of this deed? "All title of which I
am vested this day," might not, of itself, point to any-
thing wrong, but take it in connection with the balance
of the sentence, "and not to invalidate any sale hereto-
fore made, if any exists." A prudent man, with this
clause staring him in the face, would hesitate to invest
his money without further inquiry; especially when

that inquiry could have been so easily made of the very man who thus raised a question as to the validity of his own title.

Indeed, it would seem sufficient to notify any purchaser that Turney believed he was selling nothing by his quit-claim deed. This clause placed before the purchaser the fact that Turney's title and conveyance were of very little value, and amounted to a suggestion that the truth could be ascertained by a simple inquiry of the grantor. This inquiry was not made, and we are of opinion that it amounted to gross negligence, for which defendant must suffer the consequences. By his quit-claim deed, Turney constructively notified all persons (it being of record), that he was only conveying such title as he had, on the day he made the deed, and that, in his opinion, he had conveyed all his title thereto previously.

III. If it be true that at the time of the sale from Turney to Mason he executed and delivered a deed to Cauthorn, Mason's agent, then the plaintiffs had no cause of action against Turney, and none against Crowder, of course, until his purchase in 1876, and none against the defendant, Black, until he purchased from Crowder, and took possession in 1877, and there is, therefore, nothing in the position that plaintiffs are barred by the statute of limitations.

IV. The respondent insists that the circuit court did not err in dismissing plaintiffs' bill, because plaintiffs, not being in possession, cannot go into a court of equity to have a cloud removed from their title, as against one in possession holding under a deed. And the case of *Clark et al. v. The Covenant Mutual Life Insurance Company*, 52 Mo. 272, is cited as authority for that position. It is stated in that case that "the settled rule is, that when a defect appears upon the face of the record, through which the opposite party can alone claim title, there is not such a cloud upon the title as to

call for the exercise of the equitable powers of the court to remove it. But when such claim appears to be valid upon the face of the record, and the defect can only be made to appear by extrinsic evidence, particularly if that evidence depends upon oral testimony to establish it, it presents a case for invoking the aid of a court of equity to remove it as a cloud upon the title."

The case at bar would seem to fall precisely under the rule stated, in that no defect appears upon the face of the record. The conveyances, themselves, to the defendant, on their face, are perfect: Crowder to defendant; Turney to Crowder, and from the United States to Turney. The plaintiffs' equitable title must appear, if at all, by extrinsic evidence, and that evidence "particularly depends upon oral testimony to establish it." Here there is no remedy at law. Plaintiff has an equitable title, if any. He could not maintain ejectment without resorting to extrinsic oral evidence of that equity. There being no defect apparent on the face of the conveyances to the defendant, the courts of equity clearly have jurisdiction. In the case of *Piersoll v. Elliott*, 6 Peters, 95, Chief Justice Marshall dismissed the bill "because the deed therein mentioned being void at law, for matter apparent on its face, the plaintiff had not shown any circumstances which disclosed a case proper for the interference of a court of equity to relieve against such void deed." The case of *Eck v. Hatcher et al.*, 58 Mo. 235, was a bill by one not in possession against the defendants, who were in possession, to set aside conveyances alleged to have been fraudulently obtained by the defendants, in which, Napton, J., said: "We shall, therefore, reverse the judgment of the circuit court, and this court will proceed to decree that all the deeds shall be cancelled, and that the plaintiff is entitled to the possession of the premises in controversy, and that an appropriate writ issue for that purpose from the circuit court." The case of *Bunce v. Galla-*

*gher*, 5 Blatchford, 481, was where one out of possession filed a bill in equity against one in possession to have a forged deed cancelled. The general statement that one not in possession cannot bring a bill in equity to quiet title, or to remove a cloud therefrom, is, we think, too broad. That is, doubtless, the rule in cases where the complainant has the legal title, because, in such case, he may maintain ejectment for possession. But where the complainant has only an equitable title, and the legal title is in the defendant, the rule does not apply. In that case the complainant cannot sue at law, because he has no legal title, and hence can only assert his right in a court of chancery.

In the case at bar the defendant is in possession under a claim of legal title, with his deeds regular on their face, showing no irregularity whatever. How, then, can complainant assert his right unless through a court of equity. *Almory v. Hicks*, 3 Head (Tenn.) 39. Hence it is difficult to understand upon what ground his right to the aid of a court of equity can be denied. Having only an equitable title, and being in possession, he may be ousted by an ejectment, if not in possession he cannot obtain it, because he will be opposed by the legal title. If in possession he cannot bring ejectment, because he has no legal title, and because he already has possession. But, having the superior equity, and the defendant being in possession, courts of equity can alone aid him. *Branch v. Mitchell*, 24 Ark. 431; *Eck v. Hatcher*, 58 Mo. 235; *Herrington v. Williams*, 3 Tex. 448; 31 Md. 119.

In *Mead v. Knox*, 12 Mo. 247, it is said by Napton, Judge: "It is not denied that a court may grant, under the prayer for general relief, a relief different from the specific relief sought." In *Newham v. Kenton*, 79 Mo. 382, Philips, Commissioner, said: "A decree in equity must be founded upon facts consistent with, and embraced within the pleadings." In *Henderson v. Dickey*, 50 Mo. 161, Wagner, Judge, said: "Under our

statute, the court, in an equity case, may give any relief consistent with the allegations in the pleading." In *Ames v. Gilmore*, 59 Mo. 537, the same rule is laid down. Section 3692, Revised Statutes, 1879, provides that: "In all cases where judgment is given for the conveyance of real estate, or the delivery of personal property, the court may, by such judgment, pass the title of such property, without any act to be done on the part of the defendant." Section 3693, provides : "The court may issue a writ of possession, if necessary, to put the party entitled into possession," etc.

In the case at bar, the bill alleges facts which, being proved, entitles complainants to a cancellation of the deeds from Crowder to defendant, and from Turney to Crowder ; and to divest Crowder and the defendant, Black, and Daniel M. Turney, of the title to the land sued for, and that the title thereto be vested in the complainants. The conveyances from Daniel M. Turney to Thos. B. Crowder, and from said Crowder to the defendant, Black, are cancelled. The title to said real estate in said Turney and Crowder, and defendant, Black, is hereby divested, and is vested in the complainants, and the judgment is reversed and the case remanded, to be further proceeded with in accordance with this opinion. All concur.

## On re-hearing.

PER CURIAM.—We adhere to the conclusions reached in this cause on a former occasion. We so far modify the latter portion of the original opinion in this way : The judgment and decree of this court is that the title of said land of right and equity is in the plaintiffs, and that said defendant, taking with notice of plaintiffs' title, took nothing by his deed. It is, therefore, adjudged and decreed by this court that the title of said plaintiffs to said land be adjudged, decreed, declared

and established to be in said plaintiffs. To this end the judgment of the circuit court is reversed, and the cause remanded with directions to proceed in conformity with this and the original opinion, and the cause is remanded for this purpose.