## MEMPHIS LOAN & BUILDING ASSOCIATION v. ARNETT et al.; WIEGNER, Appellant.

### Division One, June 18, 1902.

1. **Conveyances:** MORTGAGE: MISTAKE IN DESCRIPTION: INNOCENT PURCHASER. The evidence in this case is reviewed and it is held that the purchaser of two lots on which there was a house, worth $850, knew that a mistake had been made in describing the property in a deed of trust for $800 given on two other adjoining lots, on which there was no house, worth only $150, and that the deed of trust had been meant to convey the lots on which the house stood, and so knowing he is not an innocent purchaser and is not permitted to hold the lots under a deed from the mortgagor for which he paid $50 in money and gave his note for $400.

Memphis Loan & Building Assn. v. Arnett.

2. ———: ———: ———: ———: ERROR IN INSTRUCTION. In a suit,
to set aside a deed as being fraudulent, and to reform another deed
in which the land is incorrectly described, if the evidence clearly
shows the fraud, the court should disregard minor errors in in-
structions to the jury, to whom the court submitted questions of
facts (for its own advice) as to the purchaser's knowledge of the
mistake in the deed.

Appeal from Scotland Circuit Court.—*Hon. E. R. McKee,*
Judge.

AFFIRMED.

*Pettingill & Myers* for appellant.

(1)   The statute requires actual notice to a purchaser of
land where a conveyance is unrecorded.   R. S. 1899, sec. 925.
Vague and flying rumors by strangers to the title do not con-
stitute actual notice.   Wade on Notice, sec. 29; 2 Pomeroy's
Equity, secs. 597 and 602.   (2)   Where an actual notice
is relied upon, as in this case, in order to be binding, it must
come from some one interested in the property to be affected
by it, and it is said that it must be given and received in the
course of the very transaction itself concerning the property
in which the parties are then engaged.   Nor will he be bound
by a notice given in some previous and distinct transaction
which he might have forgotten.   The notice must be such
actual notice as to bind the conscience of the party to be
charged with notice.   2 Pomeroy's Equity, sec. 602, and
cases there cited.   (3)   Actual notice of the existence of a
deed does not mean direct evidence that the purchaser actually
knew the deed was in existence but any proper evidence tend-
ing to show it—facts and circumstances coming to his knowl-
edge that would put a man of ordinary prudence, on inquiry;
but statements by a stranger to a title, unauthorized to speak,
by the grantee of a former deed and not growing out of the
transaction, can not be considered as a suggestion of actual

notice.    Morrison v. Juden, 145 Mo. 282; Hickman v. Green,. 123 Mo. 165.

*Smoot & Smoot* and *Mudd & Wagner* for respondent.

Implied notice is knowledge of facts and circumstances from which the law conclusively presumes notice.    Drey v. Doyle, 99 Mo. 459; Abbe v. Justice, 60 Mo. Ann. 300.    Actual notice may be shown by direct evidence, or it may be inferred from facts and circumstances.    Drey v. Doyle, supra.    The question of actual notice is a question of fact and is to be determined like any other fact.    Muldrow v. Robinson, 58 Mo. 331.    And in a jury trial is a question of fact for the jury.    Eyerman v. Bank, 13 Mo. App. 289, 84 Mo. 408; Masterson v. Railroad, 5 Mo. App. 64, 72 Mo. 342.    Positive knowledge and knowledge of facts which put a person upon inquiry are both actual notice.    Hitt v. Tissier, 15 Mo. App. 299.    Constructive notice is a legal presumption and is often conclusive upon the party.    Speck v. Riggin, 40 Mo. 405. Whatever is sufficient to put a man upon inquiry amounts to notice; that is, when one has sufficient information to lead him to a knowledge of the facts, he shall be presumed to be cognizant of it.    Roan v. Winn, 93 Mo. 503.    Where the purchaser knows of an adverse claim or title or is conscious of having means of knowing which he does not use, he is held to have actual notice.    Speck v. Riggin, supra; Senderfer v. Kemp, 83 Mo. 581.    The neighborhood in which the party lives, the situation of the property, the value of it, all may be considered in determining his knowledge.    Music v. Barney, 49 Mo. 458.    Notice signifies a means of knowledge of which a person neglects or refuses to avail himself.    Lee v. Turner, 15 Mo. App. 205, 89 Mo. 489.    Notice does not mean positive knowledge brought directly home to the party sought to be charged therewith and affected thereby, but any fact that would put a man of ordinary prudence upon inquiry.    Major

v. Bukley, 51 Mo. 227. Notice does not necessarily mean knowledge; it is not in all cases knowledge, any more than is knowledge in all cases notice. Maloney v. Bacon, 33 Mo. App. 501. It may be notice although it never reaches the party actually. Wiegner was put upon inquiry because he told Forrester there was a mortgage on this house and lot. He was put upon inquiry because of the fact that the two lots were vacant and he knew it; and knew that the loan and building association would not make a loan on property of the value of $150 to the amount of $800. He was put upon inquiry by the fact that the secretary, Dr. Thompson, told him that the association had a mortgage upon the property of eight hundred dollars. Notice is actual when the purchaser either knows of the existence of an adverse claim or title, or is conscious of having the means of knowing, although he may not use them. Rodgers v. Jones, 8 N. H. 264; Speck v. Riggin, 40 Mo. 405; Griffith v. Griffith, 1 Hoff, Ch. 153. Actual notice required by the statute is used in contradistinction to the constructive notice given by the record. It does not mean there must necessarily be direct and positive evidence that the subsequent purchaser actually knew of the existence of the deed. Any proper evidence tending to show its facts and circumstances coming to his knowledge that would put a man of ordinary circumspection upon inquiry, should go to the jury as evidence of such notice. Maupin v. Emmons, 47 Mo. 304; Whitman v. Taylor, 60 Mo. 127; Shumate v. Reavis, 49 Mo. 333; Rhodes v. Outcalt, 48 Mo. 367.

BRACE, P. J.—Albert A. Arnett, being the owner of lots *three, four, seven and eight* in block three, Wagner's addition to the city of Memphis, Missouri, on November 12, 1897, executed a mortgage of that date on said lots to John M. Jayne to secure a debt to him of $246.55.

Afterwards, on March 15, 1898, the said Arnett and his wife, Sarah A. Arnett, executed a deed of trust of that date on said lots *three and four,* to secure the payment of his note to the respondent association for the sum of $800 with interest, for money loaned him by the association, and on the same day the said Jayne released said lots three and four from the lien of his mortgage aforesaid upon the margin of the record thereof. At the time this deed of trust was executed, lots. *three and four* were vacant and were worth about $150. There was a dwelling house on lots *seven and eight,* and they were worth about eight hundred dollars.

Afterwards, by deed dated July 12, 1898, the said Arnett, for a recited consideration of $450, conveyed said lots *three, four, seven and eight,* to George C. Forrester, warranting title "except indebtedness to J. M. Jayne and except on lots 3 and 4 to building and loan association, but none of said indebtedness is assumed by said George C. Forrester."

Afterwards, by deed dated July 21, 1898, the said Forrester, for a recited consideration of $450, conveyed said lots *seven and eight* to the appellant Theo. H. Wiegner, warranting title "except as to all liens and incumbrances against said property which said second party (Wiegner) assumes," and on the same day the said Wiegner. executed a deed of trust of that date conveying said lots *"seven and eight"* to the said Forrester in trust to secure the payment of his note for $347.25 payable to the said John M. Jayne. The deed and deed of trust last aforesaid were on the same day filed for record at *11 o'clock 30 minutes a. m.* and on the same day this suit was instituted, and notice *lis pendens* thereof was filed at *"11 o'clock 25 minutes a. m."* The said Arnetts, Jayne, Forrester and Wiegner were made parties defendant. The petition charging in substance that a mutual mistake was made in describing the premises in the deed of trust from Arnett to the association as lots *three and four,* when lots *seven and*

*eight* on which the dwelling house was located, was intended to be described, and that a like mistake was made in the release by the said Jayne on the margin of the record of his mortgage on the premises. That Forrester and Wiegner had knowledge of the facts, and praying that the mistake be. corrected, and the instruments reformed in accordance with the real intentions of the parties.

To the petition, Arnett and wife made no answer. The other defendants, Jayne, Forrester and Wiegner, answered separately, joining issue upon the allegations of the petition.

At the trial the chancellor caused a jury to be impaneled to whom he submitted the following questions:

"1.   Did he (Wiegner) know that a mistake had been made in placing trust deed to building and loan association by Arnett on lots 3 and 4 instead of on lots 7 and 8 at the time he received deed from Forrester?

"2.   Did he at the time he received deed from Forrester, have knowledge and information sufficient, pertaining to the mistake of Arnett and the building and loan association in placing the trust deed of said Arnett to said building and loan association on lots 3 and 4 instead of on lots 7 and 8, to put an ordinary prudent business man on guard and inquiry?"

To which the jury returned the following answers:

"We the jury answer interrogatory No. 1, Yes; and we answer interrogatory No. 2, Yes.   Isaac Colvan, Foreman."

The trial resulted in the following decree, from which defendant Wiegner alone appeals:

"And said cause coming on for further trial before the court, and the court having heard all the evidence and adopting the findings of the jury aforesaid, doth find that the defendants, Albert A. Arnett and Sarah L. Arnett, on March 15, 1898, made, executed and delivered to plaintiff a trust deed to secure the sum of $800 and that it was the intention

and purpose of said Arnetts that said deed of trust should be given upon lots 7 and 8, in block 3 of Wagner's addition to the city of Memphis, Scotland county, Missouri, but by mistake said trust deed was given on lots 3 and 4, in said block 3. That all the defendants had notice and knowledge of said intention and purpose, and of the mistake of said Arnetts, and the court further finds that defendant, John M. Jayne, in making the release of his mortgage on the margin of the record, intended to release lots 7 and 8 in block 3, but by mistake and inadvertence, released on said margin of the record, lots 3 and 4 in said block 3, and the court further finds that the defendants, Forrester and Wiegner, took title to said lots 7 and 8 in block 3, aforesaid, with full knowledge of said mutual mistake and are not innocent purchasers of said lots 7 and 8, in said block 3, and the court further finds that plaintiff's debt aforesaid is unpaid. It is therefore ordered, adjudged and decreed by the court that said deed of trust be corrected so as to stand and be an incumbrance on lots 7 and 8, in said block 3, in Wagner's addition to the city of Memphis, Scotland county, Missouri, instead of lots 3 and 4, in said block 3, and same is hereby declared to be a prior lien and incumbrance on said lots 7 and 8, in said block 3, and superior to any claim or right of any of the defendants, and it is further ordered and decreed that the release made on the margin of the record by John M. Jayne be made to read lots 7 and 8, in block 3, Wagner's addition to the city of Memphis, Scotland county, Missouri, instead of lots 3 and 4, in said block 3, and that the lien and incumbrance of defendant John M. Jayne be restored and declared a first lien on said lots 3 and 4, in said block 3, of said Wagner's addition to the city of Memphis, Scotland county, Missouri, and superior to any claim or right of any of the other parties to this suit, and it is further ordered that defendants pay the costs of this suit and that execution issue therefor."

The consideration received by Jayne for the release aforesaid of his mortgage was an amount of money out of the loan by the association to Arnett sufficient to reduce his mortgage debt to about $50. Arnett's four lots were in the form of a square, and the evidence tends to prove that his dwelling house was on lot eight. It was insured for $500, and the policy with mortgage clause attached dated March 15, 1898, was then turned over to the association. It appears from the evidence, beyond reasonable doubt, that the property which Arnett agreed and intended to convey by the deed of trust to secure the loan of $800 to him by the respondent association, the property which that association agreed to accept as security for the loan, and the property which Jayne agreed to and intended to release from his mortgage, was the two lots on which his dwelling house was located, that is, lots "seven and eight," and not the two vacant lots, "three and four." That the description in the deed of trust and release was a mutual mistake that a court of equity ought to correct, as between these parties, is beyond question.

Jayne, who is a lawyer, seems to have been the first one of these parties to discover the mistake, and he evidently determined to profit by it. It is not clear just when he did make the discovery, but according to his own story, it was about the time he prepared the deed from Arnett to Forrester. Forrester was Jayne's brother-in-law, and although that deed recites a consideration of $450, the amount actually paid Arnett for the deed was only $100, said Jayne furnished the money. It is evident that at this time these two understood each other and the situation clearly, and that Forrester was to share in the profit. The evidence tended to prove that soon after Arnett executed the deed to Forrester, he "skipped the country," leaving debts unpaid, among them a small amount due appellant Wiegner on open account, who was surety for him also on a note to the bank for $75. That

Wiegner was a lumber dealer, had been intimate with Arnett, knew his premises, had furnished the lumber with which his dwelling house was built, knew that the buildings were on lots 7 and 8, and that lots 3 and 4 were vacant, knew the value of lots 7 and 8, with the improvements upon them, and the value of the vacant lots 3 and 4, and knew in a general way that the respondent association had made a loan to Arnett on his house and the two lots on which it was located, secured by a deed of trust. That upon being informed by Hudson, an officer of the bank, that Arnett had sold his property to Forrester and had left the country, he became anxious to save something for himself from the wreck if possible. That he with Hudson had an interview with Forrester, as to which Hudson testifies as follows: ·

"I was going home and walked on up to the corner with Wiegner, and Forrester came up and called to Wiegner. I says to Wiegner, 'There is Forrester, and we will ask him.' We asked him if he bought Mr. Arnett's property, and he said he did. Wiegner asked him what he paid for the property, . . . how much there was against it, and how much the building and loan association had against the house and two lots, and he (Forrester) said they didn't have anything against it, and Mr. Wiegner said they did. They talked awhile and Wiegner said, 'I will go with you and investigate in the morning, to see whether the building and loan association has a mortgage on the house and two lots.' Wiegner insisted that the building and loan had a mortgage on the house and two lots, and Forrester said they did not; he said if they had any mortgage it was on the other property."

Wiegner, in the course of his testimony, said: "Mr. Forrester told me there was only $52 against the property . . . I asked Jayne about the title, and he told me to look it up . . . He told me Mr. Forrester had informed me

Vol. 169 mo—14

correctly as to all there was against it. He had satisfied him-
self, for me to go and satisfy myself, and that is the way I
came to go myself and see. . . . I went early next morn-
ing to have the records looked up to see if there was a mort-
gage. McKee came and I said to him, 'Well, I wish, Nat,
you would look on the records and see if lots 7 and 8 in block
3 ̀are mortgaged.' He turned and threw the books on the
table, got the books upon the table, and he says you are right
sure it is lots 7 and 8. I says, 'I think that is right, if you
have a plat here we might look at that.' The table was
standing in the northeast corner and the book was lying on
the table. I opened the book and looked at the lots mentioned
to him, the corner lots of Arnett's. I had been there fre-
quently and knew those were the lots—Arnett's property.
He says, 'That's right,' and went and looked at the records,
and he mentioned there was a mortgage against that. He
says, 'It appears to me there has been some put on that lot.'
He looked then, and got another book, ̀and said there was ̀
so much paid, and he figured it and it left $52 and a few
cents."

And thus conscious as he was of the fact that the associa-
tion had made a loan to Arnett on his house and the two lots
on which it was located, secured by a deed of trust thereon,
he came, saw and satisfied himself that the association's deed
of trust was not on those lots, without looking at the records
of it, without making any inquiry whatever about it, or
seeking to acquire any information in regard to it. He knew
that in the very books lying open before him that deed of
trust was recorded. A glance at that record would have dis-
closed the mistake, for no one knew better than he, that the
association would not have loaned $800 on the two vacant lots
worth only $150. He would not take that glance. He would
not even step into the office of the secretary of the association
of which he was a member, and learn the truth of the matter.

He had learned all he wanted to know. He had previously seen Jayne and Forrester, and wanted to be in the deal with them, and all he wanted to know was just enough to pose as an innocent purchaser, and these three then hastily got together and consummated the deal.

There was evidently a race between them and the association as to who should get their papers to record first, and when Jayne and Wiegner reached the recorder's office with their papers they found the association attorneys there, with their papers and notice *lis pendens,* five minutes ahead of them.

Now a glance at the deal itself. The consideration recited in the deed from Forrester to Wiegner is $450. The consideration in fact was the note of Wiegner to Jayne, secured by Wiegner's deed of trust on the property for $347.25, balance due Jayne on his mortgage on the property, $52.75, and Wiegner's check given to Forrester for $50. Thus Wiegner, for $400, promised and assumed, and $50 paid, gets property worth $800, giving him a net profit of $350, to console him for any little loss his friendship for Arnett may have cost him. Jayne in Wiegner's note, gets the $100 back that he furnished Forrester to make the purchase from Arnett, and $247.25 net profit to compensate him for his professional skill in concocting and carrying out the scheme, and Forrester gets $50 for the use of his name, and any little strain the affair may have had upon his conscience. The division seems to have been eminently fair and equitable *inter sese.* The only ugly feature about it to the eye of a chancellor is the fact that the values they thus apportioned and divided between themselves, in equity and good conscience, did not belong to them at all, but to the respondent association, *and they knew it.* Upon the evidence, of which we have only given a glimpse, it is no great compliment to the perspicacity of the chancellor and his jury that they easily saw through this whole transac-

tion, and found that all of them knew of the mistake, and that the property they were covering up and dividing between them was in equity and good conscience the property of the association. Some criticism is made upon the instructions to the jury, but as the verdict of the jury in the case was simply advisory, and the instructions important only as indicating the theory upon which the case was tried, and as we find that the case was tried upon a correct theory, sustained by the evidence, those criticisms need not be noticed.

The appellant was not an innocent purchaser without notice if he knew of the mistake in the deed of trust of the association, or was conscious of having the means of such knowledge and did not use them, as an ordinarily prudent and diligent person would have done. [Taaffe v. Kelley, 110 Mo. 127, and cas. cit.; Drey v. Doyle, 99 Mo. 459; Roan v. Winn, 93 Mo. 503; Mason v. Black, 87 Mo. 329; Leavitt v. Laforce, 71 Mo. l. c. 356.]

The decree is for the right party and ought to be affirmed. It is accordingly so ordered. All concur.